Mary **ETHRIDGE**, Respondent,

v.

**TIERONE BANK**, f/k/a **First Federal Lincoln Bank**, Appellant.

No. SC 87734.

Supreme Court of Missouri,
En Banc.

June 26, 2007.

Robert J.E. Edwards, Brett D. Anders, Christian J. Kelly, Kansas City, James R. Fossard, Springfield, for Appellant.

Kerry D. Douglas, Bolivar, for Respondent.

MICHAEL A. WOLFF, Chief Justice.

### Introduction

When David Ethridge refinanced the home that he and his wife, Mary, held as tenants by the entirety, the lender prepared loan documents that slighted the wife. As the wife later said, her husband was "head of the household." That legally quaint assumption appears embodied in the lender-drafted refinancing papers that list David Ethridge, a married man, as the sole owner and the sole borrower. The law, as set forth in precedent cases dating to 1887, is harsh and unforgiving of such slights.

TierOne Bank, successor to the refinancing lender, seeks to impose the obligations of borrower on Mary Ethridge now that her husband is dead. To allow Mary Ethridge to retain the home free of the refinancing lien, the bank says, is unjust. The law, however, is unforgiving of the injustice of slighting the wife's interests at the time of refinancing—that injustice produces an enrichment of the wife who has no obligation to pay her late husband's loan. Equitable doctrines will not help. The bank loses.

### Facts

Mary and David Ethridge purchased a home in Dallas County in 1999. They took title as tenants by the entirety and financed the purchase by borrowing money from Countrywide Home Loans. This loan was secured by a deed of trust. In 2001, David Ethridge, who made all the financial decisions for the couple, decided to refinance the home. At that time, the Ethridges owed approximately $74,000 on their loan to Countrywide. David Ethridge wanted to borrow $100,000 to pay off the existing loan and use the remaining proceeds to complete a remodeling project. First Fidelity Residential Lending, Inc., agreed to make the loan to David Ethridge.

On August 6, 2001, First Fidelity made a loan in the amount of $100,000. The promissory note evidencing the loan was signed only by David Ethridge. Mary Ethridge attended the refinancing because she knew that the house was going to be refinanced and she said she understood that she would need to sign something in order for that to occur. She felt obligated to sign the necessary documents because, she said, David Ethridge was the "head of household" and made all the couple's financial decisions.

The deed of trust prepared by First Fidelity contained only one signature line with David Ethridge's name typed beneath it. David Ethridge signed on the signature line and his wife signed below the line. They both also initialed each page of the document. The deed of trust defined the term, "Borrower," as "DAVID ETHRIDGE, A MARRIED MAN, AS HIS SOLE AND SEPARATE PROPERTY." This document contained a section entitled "TRANSFER OF RIGHTS IN THE PROPERTY" which stated:

> This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants, bargains, sells, conveys and confirms to Trustee, in trust, with power of sale, the following described property...."

The deed of trust identified the property as the Dallas County real estate owned by the Ethridges. The document also provided that "BORROWER COVENANTS that Borrower is lawfully seized of the estate hereby conveyed and has the right to grant and convey the Property and ... Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record."

The last paragraph above the signature line on the Deed of Trust stated: "BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it." As noted above, David Ethridge signed the deed of trust on the line provided for his signature and Mary signed the deed of trust below the signature line. Both signatures were notarized.

The Ethridges also signed a settlement statement.

The Ethridges received $15,754.17 of the $100,000 loan proceeds. The remainder of the money was used to pay off the existing loan to Countrywide in the amount of $74,204.44 and to pay other fees associated with the refinancing. In October 2001, First Fidelity assigned the Note and Deed of Trust to TierOne Bank, appellant here. The Ethridges made payments on the loan until December 11, 2002, when David Ethridge was killed in an automobile accident. Thereafter, Mary Ethridge made no further payments.

In August 2003, Mary Ethridge filed a petition for declaratory judgment in the Circuit Court of Dallas County. She sought a cancellation of the deed of trust on the ground that it was void *ab initio* because she was not named as a grantor in the deed of trust, did not make any covenants of title and did not otherwise convey, via the instrument, her fee simple title as a tenant by the entirety in the property.

TierOne denied that the deed of trust was invalid and asserted the following affirmative defenses: (1) TierOne was entitled to have the deed of trust reformed to create a valid lien on the property; (2) Mary Ethridge should be estopped from denying the validity of the deed of trust; (3) TierOne should be granted an equitable lien on the property because the proceeds of the loan were used for her benefit; and (4) the doctrine of equitable subrogation was applicable because the proceeds of the loan were used to extinguish the prior lien on the Ethridges' property.

The trial court granted Mary Ethridge's motion for summary judgment and denied TierOne's motion for summary judgment concluding:

> ... that the real estate described in the deed of trust at issue was owned by

Plaintiff and her now deceased husband as tenants by the entirety and that in order to convey a lien to the Defendant's predecessor, it was necessary that the deed of trust use appropriate words to convey the estate. In so determining, the Court finds that it is bound by the controlling precedent, as set forth by the Supreme Court of the State of Missouri, in *Bradley et al. v. The Missouri Pacific Railway Company*, 91 Mo. 493, 4 S.W. 427 (Mo.1887), which held that the party in whom the title is vested must use appropriate words to convey the estate, and that signing, sealing or acknowledging a deed by a wife, in which her husband is the only grantor, will not convey her estate. The Court finds that in this case the party in whom the title is vested did not use appropriate words to convey the estate, even though the Plaintiff signed the Deed of Trust in question before a notary public. Therefore, the case is analogous to *Bradley*, and the Court is bound by the *Bradley* decision.

TierOne appeals. After an opinion by the Court of Appeals, Southern District, this Court granted transfer. Mo. Const. art. V, sec. 10. The judgment is affirmed.

## DISCUSSION

**Standard of Review**

There are no facts in dispute. The standard of review of summary judgment on appeal is essentially *de novo*. *ITT Commercial Finance Corp. v. Mid–America Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993).

**The deed of trust unambiguously designates only David Ethridge as "Borrower"**

The main question in this case is whether the deed of trust conveyed a valid lien to the lender on Mary Ethridge's interest in the land. To answer this, the Court must ascertain the intent of the parties by looking at the words of the contract and giving those words their plain, ordinary, and usual meaning. *State ex rel. Vincent v. Schneider*, 194 S.W.3d 853, 859–860 (Mo. banc 2006). The "intent of the parties . . . is determined based on the contract alone unless the contract is ambiguous." *Trimble v. Pracna*, 167 S.W.3d 706, 714 (Mo. banc 2005) (citing *J.E. Hathman, Inc. v. Sigma Alpha Epsilon Club*, 491 S.W.2d 261, 264 (Mo. banc 1973)).

"[A] contract is only ambiguous, and in need of a court's interpretation, if its terms are susceptible to honest and fair differences." *Schneider*, 194 S.W.3d at 860. "A contract is not ambiguous merely because the parties disagree as to its construction." *Id.* "An ambiguity exists when there is duplicity, indistinctness, or uncertainty in the meaning of the language in the policy. Language is ambiguous if it is reasonably open to different constructions." *Seeck v. Geico General Ins. Co.*, 212 S.W.3d 129, 132 (Mo. banc 2007) (quoting *Gulf Ins. Co. v. Noble Broadcast*, 936 S.W.2d 810, 814 (Mo. banc 1997)).

The deed of trust defines "Borrower" as David Ethridge, notes that he is married, but indicates—albeit incorrectly—that title is vested solely in him. This is the only definition of borrower in the document and the only description of the property's ownership. The deed of trust does not reference Mary Ethridge or otherwise indicate that another individual is also a borrower or grantor. This definition is not open to different constructions and cannot reasonably be construed to mean that Mary Ethridge also is a borrower under the deed of trust. Mary's initials on the document or her signature underneath the signature line on the final page of the document do

not change the unambiguous nature of the deed's plain description of David Ethridge as the sole borrower and sole owner of the property. The separate "settlement statement" listing Mary Ethridge as borrower has no effect on the deed of trust.

This Court's reading of the deed of trust is controlled by *Bradley v. Missouri Pac. Ry. Co.*, 91 Mo. 493, 4 S.W. 427, 428 (Mo. 1887). In *Bradley,* the husband deeded a piece of property owned by the wife to a third party. The deed, however, was signed and acknowledged by the wife. Despite the wife's signature, which was attested to, this Court ruled that her interest in the property was not conveyed. "The party in whom the title is vested, [sic] must use appropriate words to convey the estate. Signing, sealing, and acknowledging a deed by the wife in which her husband is the only grantor, [sic] will not convey her estate." *Id.*

■ Mary and David Ethridge held the property as tenants by the entirety. Under *Bradley,* in order to validly convey Mary's interest in the property, she must have been named as a grantor, who in this case is the individual defined as "Borrower" under the deed of trust. A deed by only one of two tenants by the entirety conveys nothing. *Austin & Bass Builders, Inc. v. Lewis,* 359 S.W.2d 711, 714 (Mo. banc 1962). Because Mary Ethridge was not a grantor of the deed of trust, she did not make any covenants of title and did not otherwise convey an interest in the property. The deed of trust did not convey a valid lien.

### TierOne cannot prevail on any alternate equitable theory

TierOne argues that, even if the deed of trust is invalid, this Court should enforce the document against Mary under several alternative theories, namely, the doctrines of reformation, estoppel, equitable lien, and equitable subrogation.

### Reformation

■ TierOne argues that the deed of trust should be reformed to preserve the intention of the parties and give effect to that intention. For reformation to apply there must be "clear, cogent and convincing evidence" of (1) a preexisting agreement between the lender and Mary and David Ethridge in which the parties agreed that a lien would be placed on the property, (2) a scrivener's mistake in drafting the agreement, and (3) that the mistake was mutual as between the grantors and the grantees. *Ethridge v. Perryman,* 363 S.W.2d 696, 698 (Mo.1963). "Reformation of a written instrument is an extraordinary equitable remedy and should be granted with great caution and only in clear cases of fraud or mistake." *Morris v. Brown,* 941 S.W.2d 835, 840 (Mo.App. 1997).

The doctrine of reformation was used to reform an incorrect deed of trust in *Perryman,* 363 S.W.2d at 696. There, a husband and wife, who owned the property as tenants by the entirety, executed both a promissory note and a deed of trust securing the note on the property. *Id.* at 698. It was later discovered that, due to a scrivener's error, the deed of trust did not cover all of the intended property. *Id.* at 699. The lender sued to reform the deed of trust, which was granted. *Id.* at 697–98. This Court affirmed, finding that the deed of trust did not reflect the parties' intent. *Id.* at 700–702.

■ The evidence here shows that the deed of trust is not subject to reformation as none of the *Perryman* factors are met. First, there is no evidence that Mary Ethridge had a preexisting agreement with the lender to grant a deed of trust. The evidence reflects that the agreement was always between David Ethridge and the

lender. Further, as discussed above, there is no evidence in the deed of trust that Mary Ethridge was a party to the agreement. "Reformation presupposes a valid prior agreement evidencing a meeting of the minds," which is simply not present here. *Morris,* 941 S.W.2d at 840. Second, there is no evidence that there was a scrivener's error. The evidence reflects that David Ethridge and the lender had a prior agreement that was, in fact, accurately reflected in the deed of trust. David Ethridge intended to grant the lender a lien on the property and the lender intended to hold the lien.

This case is in sharp contrast to *Perryman* where there was compelling evidence that all parties to the agreement intended for the deed of trust to cover three lots of land. 363 S.W.2d at 698. There, a true scrivener's error caused the security instrument to only include one lot of land. *Id.* This error inaccurately represented the parties' intent and the document was properly reformed to reflect the parties' true intent. Here, there was no mistake as to the parties' intent. There is no clear, cogent, and convincing evidence that it was Mary Ethridge's intent to grant a lien to the lender or that there was a mistake in drafting the deed of trust. The doctrine of reformation cannot be applied.

**Equitable Estoppel**

■ TierOne contends that Mary should be estopped from contending that only her late husband was the grantor, because such contention would render false the title covenant contained in the deed of trust, allowing her to reap a windfall resulting from such falsity.

■ "The essential elements of an equitable estoppel as related to the party estopped are: (1) Conduct which amounts to a false representation or concealment of material facts, or, at least, which is calculated to convey the impression that the facts are otherwise than, and inconsistent with, those which the party subsequently attempts to assert; (2) intention, or at least expectation, that such conduct shall be acted upon by the other party; (3) knowledge, actual or constructive, of the real facts." *Board of Education of City of St. Louis v. St. Louis County,* 347 Mo. 1014, 149 S.W.2d 878, 880 (Mo.1941).

The bank's argument for equitable estoppel fails on the first element. In order to satisfy the first element, Mary Ethridge would have had to make a false representation of fact, concealed a material fact, or otherwise mislead the bank. There is no evidence that Mary Ethridge engaged in any false or misleading conduct. TierOne asserts that she made false title covenants when signing the deed of trust, but TierOne's argument overlooks the fact that Mary Ethridge did not sign the document as "Borrower." Only the "Borrower," David Ethridge, made any covenants. TierOne is not entitled to equitable estoppel.

**Equitable Lien and Equitable Subrogation**

■ TierOne contends that if the trial court denied it relief on all of the legal bases set forth, the trial court should grant TierOne an equitable lien or use the doctrine of equitable subrogation to place TierOne in the position of the prior lien holder.

■ "Equity allows a lien to be placed on the proceeds of the sale of property on which an obligation is owed and where the law does not provide an adequate remedy and justice would suffer without equitable relief." *Estate of Ripley v. Mortgage One Corp.,* 16 S.W.3d 593, 596 (Mo.App.1999). "[G]enerally there must be an express agreement, or conduct or dealings of the parties from which an intention may be implied, that some specific

property shall be appropriated as security for a debt or obligation before equity will consider that a lien should be declared on the property." *Wilkinson v. Tarwater,* 393 S.W.2d 538, 542 (Mo.1965).

Broken into elements, the requirements for establishing an equitable lien are: "1) a duty or an obligation owing by one person to another; 2) a *res* to which that obligation fastens, which can be identified or described with reasonable certainty; and 3) an intent, express or implied, that the property serve as security for the payment of the debt or obligation. *Estate of Ripley,* 16 S.W.3d at 596.

TierOne's argument fails for the simple reason that Mary did not owe an obligation to the lender. She did not sign the promissory note. Since Mary Ethridge did not owe an obligation, the first essential element for equitable estoppel is not present.

TierOne also contends that it should be placed into the first lien position that was occupied by the previous mortgage lender just before the refinancing occurred. This is an argument for equitable subrogation; that is, another argument that TierOne should be given a lien as a matter of equity.

There is no general rule regarding when the doctrine of equitable subrogation applies. Its application depends on the facts of the case. This equitable doctrine, explained in *Anison v. Rice,* 282 S.W.2d 497, 503 (Mo.1955), "is enforced whenever the person making the payment stands in such relations to the premises or to the other parties that his interests, recognized either by law or by equity, can only be fully protected and maintained by regarding the transaction as an assignment to him, and the lien of the mortgage as being kept alive, either wholly or in part, for his security and benefit."

As the doctrine of equitable subrogation developed in Missouri, it became known as "a fairly drastic remedy ... usually allowed only in extreme cases 'bordering on if not reaching the level of fraud.'" *Thompson v. Chase Manhattan Mortg. Corp.,* 90 S.W.3d 194, 206 (Mo.App.2002) (quoting *Metmor Financial, Inc. v. Landoll Corp.,* 976 S.W.2d 454, 461 (Mo.App. 1998).

For equitable subrogation to apply, Mary Ethridge must have engaged in fraudulent conduct or committed acts bordering on fraud that created the condition that caused the lender a loss. There are no facts asserted here that give rise to fraud or conduct bordering on fraud on the part of Mary Ethridge. Nor is there any evidence that David Ethridge acted fraudulently. The mere fact that Mary Ethridge benefited from the discharge of the preexisting loan against her property does not *per se* require equitable relief in favor of TierOne. *Id.* at 204–05. This position is supported by the maxim that "[a]gainst the consequences of that negligence, for which [a party] has no one to blame but himself, a court of equity *cannot* relieve him by interfering with the legal rights of others who are without fault." *Id.* at 206 (*quoting Bunn v. Lindsay,* 95 Mo. 250, 7 S.W. 473, 476 (Mo.1888). The lender prepared the deed of trust that inaccurately described the property as being solely owned by David Ethridge. Mary Ethridge is not at fault for the errors committed by the lender or her late husband. Equitable subrogation cannot be applied.

## Conclusion

Although the result in this case seems harsh as to the bank's interests, it is required by settled law. The trial court correctly concluded that the asserted lien was invalid and that there were no reme-

dies available to change the words used in the deed of trust.

The judgment is affirmed.

LAURA DENVIR STITH, PRICE and RUSSELL, JJ., and LOWENSTEIN, Sp.J., concur.

LIMBAUGH, J., dissents in separate opinion filed; TEITELMAN, J., concurs in opinion of LIMBAUGH, J.;

WHITE, J., not participating.

STEPHEN N. LIMBAUGH, JR., Judge, dissenting.

I respectfully dissent. This case presents a clear example of a mutual mistake for which reformation is the appropriate remedy. In my view, the deed of trust should be reformed to give effect to the intent of the parties, which is that Mary Ethridge agreed to be bound by its provisions.

In 1999, Mary and David Ethridge purchased a home in Dallas County, Missouri, and took title as tenants by the entirety. In 2001, Fidelity First Residential Lending, Inc. (Fidelity) made a loan to David Ethridge, evidenced in part by a promissory note in the principal amount of $100,000, in order to refinance existing indebtedness that was secured by a mortgage lien with Countrywide Home Loans on the Ethridge's home. On the deed of trust prepared by Fidelity, the blank on the line that defined the term "Borrower" was erroneously filled out to read, "DAVID ETHRIDGE, A MARRIED MAN, AS HIS SOLE AND SEPARATE PROPERTY" and provided that the Borrower "accepts and agrees to the terms and covenants contained [therein]" and "Covenants that Borrower is lawfully seized of the estate hereby conveyed and has the right to grant and convey the Property...." Both Mary and David Eth-

ridge signed the deed of trust after initialing each page. Both then signed a loan settlement statement in which they both were repeatedly listed as borrowers. From the $100,000 loan proceeds, they were paid $15,754.17, and the balance was used to pay off the existing loan to Countrywide and other fees associated with the refinancing. At that point, the note and deed of trust were assigned to TierOne Bank. Now, having enjoyed the benefits of the loan proceeds for several years, Mary Ethridge has unjustly and inequitably persuaded this Court that the deed of trust should be declared void *ab initio* simply because her name was mistakenly omitted from the definition of borrower.

"Reformation is that remedy in equity by means of which a written instrument is made or construed so as to express or conform to the real intention of the parties when some error or mistake has been committed." 76 C.J.S. *Reformation of Instruments*, sec. 2 (2007). As correctly noted by the majority, TierOne bears the burden of proving by clear and convincing evidence (1) a preexisting agreement between Mary and David Ethridge and the lender, Fidelity, that a lien be placed on the property described in the deed of trust, (2) a scrivener's error in drafting the deed of trust, and (3) mutuality of mistake as between all the parties. *Ethridge* [no relation disclosed] *v. Perryman*, 363 S.W.2d 696, 698 (Mo.1963).

At the outset, the deed of trust is arguably ambiguous because, on the one hand, only David Ethridge is named as the "borrower," and on the other, both Mary Ethridge and David initialed each page, and Mary signed her name immediately below the signature line at the end of the document where David signed the space marked "borrower," indicating that she was a borrower as well. Indeed, the deed of trust contains a customary term of con-

struction stating that singular terms in the document shall include the plural, and plural terms, the singular.

Regardless, the remedy of reformation does not depend on ambiguity, nor does it depend on fraud (as required for the other equitable remedies sought by TierOne)— mere mutual mistake is sufficient. *Moran Bolt & Nut Mfg. Co. v. St. Louis Car Co.*, 210 Mo. 715, 109 S.W. 47, 51 (Mo.1908); *Morris v. Brown*, 941 S.W.2d 835, 840 (Mo.App.1997). Furthermore, the majority's full-blown reliance on the ancient case of *Bradley v. Missouri Pac. Ry. Co.*, 91 Mo. 493, 4 S.W. 427, 428 (Mo.1887), should not control the disposition here. To be sure, *Bradley* holds, in essence, that a signatory to a deed does not convey his or her interest in the property unless the signatory was also named as a grantor in the body of the deed, but the remedy of reformation was not sought in that case, and the Court did not address it.

Instead, the case must be decided simply on the evidence that pertains to the three above-stated elements of mutual mistake. In that determination, the majority unfortunately omitted from its citation to the standard of review the principle that "[w]hen considering appeals from summary judgments, the Court will review the record in the light most favorable to the party against whom judgment was entered." *ITT Commercial Fin. Corp. v. Mid–America Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993). By overlooking the proper standard of review, it was much easier for the majority to conclude that "there was no evidence that Mary Ethridge had a preexisting agreement with the lender to grant a deed of trust," that "the evidence reflects that the agreement was always between David Ethridge and the lender," and that "there is no evidence that there was a scrivener's error [because the agreement between David Ethridge and the lender] was, in fact, accurately reflected in the deed of trust." For these reasons, then, the majority concludes there was no mistake at all.

But a critical mistake did in fact occur. The mistake was that the bank prepared and the Ethridges signed a deed of trust that inaccurately identified the property as David Ethridge's "sole and separate property." Only as a result of that mistake can Mary Ethridge and the majority now claim that David Ethridge's agreement with the bank was his, and his alone. Had the deed of trust accurately stated that the property was owned jointly by both Mary and David Ethridge, then it could not have been lawfully executed without Mary's agreement and signature, and the Ethridges would have been foreclosed from arguing that the agreement was David's alone.

As it happened, however, Mary Ethridge did in fact sign the deed of trust in order to convey her interest to the bank. To hold otherwise would be to ignore the uncontested evidence that Mary Ethridge was required by her husband and the bank to attend the closing for the purpose of executing whatever paperwork was necessary to perfect the deed of trust and otherwise facilitate the issuance of the loan. She, herself, testified that she attended the loan closing with her husband because she knew their house was being refinanced, and she assumed she would have to sign something in connection with the loan. Moreover, she was listed in the settlement statement as a "borrower" and signed the statement as "borrower" in two places. In this way, and despite the majority's conclusion to the contrary, she was indeed a party to the preexisting agreement with the bank, and her involvement was an essential component of that agreement.

In sum, applying the three element test from *Ethridge v. Perryman,* I would hold

that TierOne presented clear and convincing evidence (1) that Mary Ethridge was a party to the agreement with the bank, (2) that a scrivener's error was made in identifying the property as David Ethridge's "sole and separate property," and (3) that the mistake was mutual because all agree that David did not own the property as his "sole and separate property." Accordingly, I would reform the deed of trust to reflect that Mary Ethridge owned the property with her husband and that she signed the deed of trust as such, thus conveying her interest in the property. Only then will the transaction reflect the true intent of the parties.

Under these circumstances, I would reverse the judgment of the trial court and enter summary judgment in favor of TierOne, or at the very least, the case should be remanded for a trial on the issue of Mary Ethridge's intent.