**HOMECOMINGS FINANCIAL NETWORK, INC.,**
Respondent,

v.

**Tiffany BROWN and James McCray, Appellants.**

No. WD 71415.

Missouri Court of Appeals, Western District.

June 21, 2011.

Jeremiah Kidwell, Jason C. Conkright, Kansas City, MO, for Appellants.

Eric D. Roby, Independence, MO, for Respondent, Homecomings.

Bruce E. Strauss, Kansas City, MO, for Respondent, Hartley Mortgage.

Before: VICTOR C. HOWARD, P.J., THOMAS H. NEWTON, and ALOK AHUJA, JJ.

THOMAS H. NEWTON, Judge.

Ms. Tiffany Brown and Mr. James McCray (collectively "Buyers") appeal the trial court's judgment in favor of Homecomings Financial Network, Inc. (Homecomings). Buyers argue that the trial court erred in granting Homecomings's petition for damages because Homecomings was not entitled to the equitable remedy of subrogation. We affirm in part, reverse in part, and remand.

## Factual and Procedural Background

Buyers purchased a home and financed it through NovaStar Home Mortgage, Inc. (NovaStar). Buyers borrowed $127,181 at an interest rate of 7.6%, which required them to make payments of $1,195 a month to NovaStar; the monthly amount included escrow payments for insurance and taxes. Subsequently, Buyers decided to contact Mr. Phil Duncan of Hartley Mortgage Company (Hartley) to refinance their mortgage. They sought preapproval for a loan with a lower interest rate; they signed papers for a loan at a 6.5% interest rate, fixed for a 30–year term. Mr. Duncan then informed Mr. McCray that he could not find a loan under the terms of the agreement.

After a while, Mr. Duncan contacted Mr. McCray and told him that he was able to refinance the loan at the desired terms. Mr. McCray requested paperwork from Mr. Duncan showing the closing documents, but instead received an envelope in his mailbox with Homecomings's name, an account number, and Homecomings's phone number written on it. Mr. McCray spoke with a representative from Homecomings who informed him that he owed a payment of $1,033.70. Believing that the loan was at a lower interest rate, he started making payments on the loan in 2003.

He later discovered that the payment was lower than the original payment because an escrow account was not included. In 2004, Homecomings created an escrow account requiring Mr. McCray to pay almost an additional $300 a month. Mr. McCray paid the additional amount and $1,033. Homecomings increased the payment on the loan in 2005, and Mr. McCray paid the loan amount plus at least $264.00 in escrow.

Mr. McCray stopped making payments in August 2006 because he believed the loan agreement was fraudulent. After unsuccessful attempts at collecting payments, Homecomings filed a petition for damages against Buyers. Homecomings sought judicial foreclosure on its deed of trust or a foreclosure on an equitable lien under claims of unjust enrichment, equitable foreclosure, constructive trust, and equitable subrogation.

Buyers filed an answer and included the entities and their agents involved in the refinancing of the NovaStar loan with Homecomings as third-party defendants. They alleged several affirmative defenses and raised counterclaims against the entities and their agents, including Hartley and Mr. Duncan,[1] for fraud and other torts. One of those entities, Assured Quality Title Company (Assured), and its agent, Mr. Scott Moore, filed a motion to strike the third-party petition because Buyers did not meet the third-party pleading requirement that they were entitled to indemnification from Assured, or in the alternative, to dismiss the cross-claims. The trial court entered judgment in favor of Assured against Buyers, struck all cross-claims, and dismissed all third-party defendants.

At a bench trial in 2009, Homecomings presented evidence that it was not part of

---

1. Buyers dismissed Mr. Duncan without prejudice.

the closing on the loan. It also stated that it received a deed of trust and other loan documents containing Buyers' notarized signatures. It claimed that it relied on those signatures in purchasing the NovaStar loan and paying Hartley a broker's fee of $7,400. It was also shown that Homecomings had been paying taxes and insurance since 2006 without any contribution from Mr. McCray, despite Mr. McCray living in the home. Buyers presented evidence that those signatures were forged and that they did not agree to the terms of the purported loan with Homecomings.

After hearing the evidence, the trial court determined that the refinance transaction was fraudulent and that Buyers and Homecomings were the victims and not participants. Nevertheless, the trial court determined that because Homecomings had paid the NovaStar loan and extinguished the Purchase Money Deed of Trust, no adequate remedy at law existed and that equity demanded Homecomings be "equitably subrogated to the position previously held by [NovaStar] pursuant to its original Purchase Money Deed of Trust." It concluded that Homecoming's interest in the property could only be protected and maintained by regarding the transaction as an assignment of NovaStar's Purchase Money Deed of Trust. It awarded Homecomings a total of $143,030.95. The trial court also stated that Homecomings could foreclose on the lien if Buyers failed to pay the sum. Buyers appeal.

## Standard of Review

We review bench-tried cases under *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976). *Pony Express Cmty. Bank v. Campbell*, 206 S.W.3d 399, 401 (Mo.App. W.D.2006). Thus, we affirm unless the decision is not supported by substantial and competent evidence, is against the weight of the evidence, or erroneously declares or applies the law. *Id.*

## Legal Analysis

In their first point, Buyers argue that the trial court erred in granting equitable subrogation because equitable relief can only be granted after an affirmative showing that no adequate remedy at law exists and Homecomings failed to adduce evidence that it had no adequate remedy at law. In their second point, Buyers argue that the trial court erred in granting equitable subrogation because the circumstances did not support its application.

A claim for equitable subrogation seeks a lien as a matter of equity. *Ethridge v. TierOne Bank*, 226 S.W.3d 127, 134 (Mo. banc 2007). The doctrine's application is fact-dependent. *Id.* at 134. Circumstances in which the doctrine may be applied include: "the person making the payment stands in such relations to the premises or to the other parties that his interests, recognized either by law or by equity, can only be fully protected and maintained by regarding the transaction as an assignment to him, and the lien of the mortgage as being kept alive, either wholly or in part, for his security and benefit." *Id.*

Buyers argue that equitable subrogation was improper because, *inter alia*, they did not engage in the fraudulent conduct or any conduct bordering on fraud, which created Homecomings's loss. In *Ethridge*, the Missouri Supreme Court limited equitable subrogation: it is "a fairly drastic remedy ... usually allowed only in extreme cases bordering on if not reaching the level of fraud." *Id.* (citation and internal quotation marks omitted). The supreme court held that for Ms. Ethridge to be liable to the lender for equitable subrogation, she had to have "engaged in fraudulent conduct or committed acts

bordering on fraud that created the condition that caused the lender a loss." *Id.* It then found equitable subrogation was not applicable because Ms. Ethridge was not complicit in any fraud. *Id.* Because the trial court determined that Buyers did not defraud Homecomings, but were victims of the fraudulent refinancing, its grant of equitable subrogation was an erroneous application of the law. As a result, NovaStar's deed of trust assigned to Homecomings is not a valid lien against Buyers' property, and is void and of no legal effect.

■ Homecomings also asserted a claim of unjust enrichment seeking a money judgment. The trial court granted this claim, stating that Buyers had been unjustly enriched to Homecomings's detriment because Buyers had "received and appreciated the benefits of [Homecomings] paying and extinguishing the purchase money loan and Purchase Money Deed of Trust held by [NovaStar], and paying the real property taxes and hazard insurance premiums relating to the Property."

■ "One who confers a benefit upon another due to a mistake is entitled to restitution." *Ticor Title Ins. Co. v. Mundelius,* 887 S.W.2d 726, 728 (Mo.App. E.D. 1994). A right to restitution[2] is established under unjust enrichment if the following elements are satisfied: "(1) that the defendant was enriched by the receipt of a benefit; (2) that the enrichment was at the expense of the plaintiff; (3) that it would be unjust to allow the defendant to retain the benefit." *Id.* at 727. Homecomings presented evidence establishing those ele-

ments; Buyers do not challenge the unjust enrichment finding. Accordingly, we affirm the liability finding in favor of Homecomings under unjust enrichment.

■ Under unjust enrichment, a party is awarded only the amount of the enrichment that would be unjust for the other party to retain, rather than the actual amount of the enrichment. *Zipper v. Health Midwest,* 978 S.W.2d 398, 412 (Mo. App. W.D.1998). In deciding whether to reimburse a party, the court must balance the equities between the parties. *Ticor Title Ins. Co.,* 887 S.W.2d at 728; *see also Farmers New World Life Ins. Co., Inc. v. Jolley,* 747 S.W.2d 704, 705–06 (Mo.App. W.D.1988). Because the court erroneously treated the transaction as an assignment and revived the NovaStar loan, it is unlikely the court considered the equities. Buyers' equities included, but are not limited to, increased mortgage payments for three years on the Homecomings loan and obtaining an attorney to combat the dunning from Homecomings when Mr. McCray could no longer afford to make payments at the increasing interest rates and realized he was a victim of fraud. *See Jefferson v. Am. Fin. Group, Inc.,* 163 S.W.3d 485, 489–90 (Mo.App. E.D.2005). Thus, we reverse the damages and remand for the trial court to render an award after considering the equities in this situation. Buyers' second point is granted.[3]

### Conclusion

Therefore, we reverse the trial court's judgment as to the equitable subrogation claim and the right to foreclose on the

2. "Restitution also encompasses equitable remedies such as constructive trust, accounting, equitable lien [,] and subrogation where the equitable powers of a court must be exercised to secure the payment of money, establish an equitable lien or restore specific property." *Farmers New World Life Ins. Co., Inc.*

*v. Jolley,* 747 S.W.2d 704, 705 (Mo.App. W.D. 1988).

3. Buyer's first point is moot as it relates to the equitable subrogation because we have reversed the grant of the claim.

equitable lien. We affirm the trial court's liability determination as to the unjust enrichment claim but reverse the damages award, and remand the case to the trial court for further proceedings consistent with this opinion.

HOWARD, P.J., and AHUJA, J. concur.