

# MISSOURI COURT OF APPEALS
## WESTERN DISTRICT

DEUTSCHE BANK NATIONAL
TRUST COMPANY, AS
INDENTURE TRUSTEE FOR
AMERICAN HOME MORTGAGE
INVESTMENT TRUST 2006-3,

        Respondent,

  v.

GUILLERMO LUNA, ET AL.,

        Appellants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)

WD84820

OPINION FILED:

December 6, 2022

**Appeal from the Circuit Court of Jackson County, Missouri**
**Honorable Kevin Duane Harrell, Judge**

**Before Division Two:**
**Lisa White Hardwick, P.J., Thomas N. Chapman and Janet Sutton, JJ.**

Guillermo and Lourdes Luna (the Lunas), and Las Cumbres, Inc. appeal the judgment of the Jackson County Circuit Court reforming a deed to correct the property's legal description, changing the designations of the grantor of the deed and borrower on the note as Las Cumbres, Inc., and in entering a declaratory judgment that the deed of trust was a valid and first priority lien on and against the property. We affirm the judgment.

## Factual and Procedural Background

In March 1977, the Lunas acquired real property located at 7219 Main Street in Kansas City, Missouri (the property). In early 1980, the Lunas conveyed the property,

as well as four other rental properties they owned, to Las Cumbres, Inc., a Missouri corporation wholly owned by the Lunas. The Lunas used the property as a rental property.

The Missouri Secretary of State administratively dissolved Las Cumbres, Inc. in 1991 because it failed to file an annual report with the Secretary of State. Beginning in 2000, the Lunas transferred rental properties held by Las Cumbres, Inc. back to themselves, in their names, as husband and wife. The Lunas did not transfer the property at 7219 Main back to themselves, and title remained vested in Las Cumbres, Inc.

In 2006, the Lunas applied for a refinance mortgage loan from HLB Mortgage (HLB), stating in their loan application that they were the title owners of the property. In late September 2006, HLB made a mortgage loan (the loan) to the Lunas, and the Lunas executed and delivered to HLB a note in the principal sum of $85,800.00 (the note). The Lunas executed a deed of trust against the property in favor of HLB, which was recorded in the recorder's office. In the deed of trust, the Lunas affirmed they were "lawfully seised of the [property] . . . and ha[d] the right to grant and convey the [p]roperty and that the [p]roperty [was] unencumbered, except for encumbrances of record." Contemporaneously with the execution of the note and deed of trust, the Lunas signed a compliance agreement promising to assist HLB and its assigns if any issues concerning the deed of trust arose. A Spanish speaking interpreter communicated the information in the loan documents to the Lunas. HLB advanced the funds to the Lunas under the loan's terms.

2

In 2010, Deutsche Bank National Trust Company, as Indenture Trustee for American Home Mortgage Investment Trust 2006-3 (Deutsche Bank) acquired the mortgage loan from HLB.

In November 2017, Deutsche Bank filed a verified petition for reformation of instruments relating to the property. That same month, Deutsche Bank also filed a *lis pendens* against the property with the recorder of deeds. At the time of the filings, the Lunas were in default on the note.

In May 2018, Deutsche Bank filed a four-count amended petition requesting the following: (1) reformation of the deed to correct an error in the legal description of the property and to reflect that Las Cumbres Inc. was a borrower throughout the deed of trust documents; (2) a declaratory judgment that the deed as reformed constituted a first, prior, and paramount lien on the property; (3) quiet title; and (4) imposition of an equitable lien against the property.

In July 2018, while the reformation action was pending, Las Cumbres, Inc. executed and filed a warranty deed attempting to convey the property to Las Cumbres, LLC. The deed identified the grantor as Las Cumbres, Inc. a Missouri corporation, despite the fact that Las Cumbres Inc., was administratively dissolved twenty-seven years earlier. The Lunas signed on behalf of Las Cumbres, Inc. Las Cumbres, LLC was controlled by the Lunas and the Lunas' son, Guillermo E. Luna, Jr., each having a thirty-three percent membership interest of Las Cumbres, LLC. In February 2020, Las Cumbres, LLC filed for bankruptcy.

In March 2021, the court held a bench trial on the reformation action. Deutsche Bank introduced evidence to establish that while Las Cumbres, Inc. was the titled

3

owner of the property, the Lunas leased the property in their name as the titled owners and reported the income from the rental of the property on their personal income tax returns for the years 2014, 2015 and 2016. Deutsche Bank also established that in 2010, March and November 2013, and 2019, the Lunas filed for bankruptcy, and in all four bankruptcy cases the Lunas represented that they were the title owners of the property, that there was a mortgage on the property, and that the mortgage was undisputed. In the bankruptcy cases, the Lunas did not disclose their interest in Las Cumbres, Inc. and affirmatively stated that they held "no stocks or interest in any incorporated or unincorporated entities."

Guillermo Luna testified at trial that the Lunas' native language was Spanish. He testified that attorneys assisted the Lunas in both buying property and in obtaining loans and that they signed documents based on their attorney's advice. Mr. Luna had no specific recollection of the purchase of the property. The Lunas' attorney argued that both HLB and Deutsche Bank were on constructive notice that the Lunas were not the titled owners of the property at the time the mortgage was executed, and that the court should not protect a party from its own negligence. The Lunas' attorney also argued that the Lunas were "simple," "unsophisticated," and "relied totally" on others for guidance and direction.

The court found that the note and deed of trust on the property evidenced a preexisting agreement. The trial court also found that the Lunas, either personally or as Las Cumbres Inc., intended to enter into a valid transaction with HLB, that the Lunas asserted ownership of the property in four different bankruptcy proceedings, that the mortgage on the property was valid and uncontested, that the Lunas made payments on

4

the mortgage loan against the property, that the Lunas manifested title ownership of the property on lease agreements in 2013, 2014, and 2017, and that the Lunas reported direct rental income from the property on their personal tax returns for 2014, 2015, and 2016. The court found there was a mutual mistake as to the ownership of the property—the Lunas were mistaken as to who was the actual title owner of the property at the time of the loan application, and HLB relied on the false ownership information from the Lunas when it made the loan.

The court entered judgment for Deutsche Bank and ordered the deed reformed (1) to correct a scrivener's error in the legal description;[1] (2) to change the designations of the grantor of the deed and borrower on the note as Las Cumbres, Inc, and (3) entered a declaratory judgment that the deed constituted a first, prior and paramount lien on the property.[2]

The Lunas appeal.

### Standard of Review

"An action for the reformation of a written contract is an equity action that is tried by the court." *Fastnacht v. Ge*, 488 S.W.3d 178, 183 (Mo. App. W.D. 2016). We will affirm the judgment unless it is not supported by substantial evidence, it is against the weight of the evidence, or it erroneously declares or applies the law. *Id.* (citing

---

[1] The Lunas do not challenge the court's reformation of the deed to reflect the correct legal description of the property.

[2] Deutsch Bank requested additional equitable relief in the form of quiet title against Las Cumbres, Inc., specific performance against the Lunas, and an equitable lien against the property. The court concluded that those equitable remedies were sought as an alternative to the claims for reformation, declaratory judgment, and judicial estoppel and, because the court granted Deutsch Bank equitable relief sufficient to make the deed of trust enforceable against the property, the court declined to grant the alternative forms of relief.

*Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976)).[3] On claims that the judgment is not supported by substantial evidence or that the judgment is against the weight of the evidence, we will defer to the trial court's assessment of the evidence and will reverse the judgment only when we have a firm belief that it is wrong. *Id.* We apply *de novo* review to a claim that the trial court erroneously declared or applied the law, including the purely legal question of what factors must be shown to invoke judicial estoppel. *Id.; Vacca v. Mo. Dep't of Lab. and Indus. Relations*, 575 S.W.3d 223, 230 (Mo. banc 2019). However, we review a trial court's discretionary application of judicial estoppel to the facts of the case for an abuse of discretion. *Vacca,* 575 S.W.3d at 230. A court abuses its discretion when a ruling is clearly against the logic of the circumstances and is so unreasonable as to indicate a lack of careful and deliberate consideration. *Stephen W. Holaday, P.C. v. Tieman, Spencer & Hicks, L.L.C.,* 609 S.W.3d 771, 780 (Mo. App. W.D. 2020).

---

[3] The Lunas' points fail to identify which *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976), ground (or grounds) they believe the judgment violates. We can reverse a judgment only on a *Murphy* ground. *Smith v. Great Am. Assur. Co.*, 436 S.W.3d 700, 704 (Mo. App. S.D. 2014). "In order to comply with the rules of appellate procedure in Rule 84.04, a point on appeal must proceed under one of the *Murphy v. Carron* grounds, each of which requires a distinct analytical framework." *Ebert v. Ebert*, 627 S.W.3d 571, 580 (Mo. App. E.D. 2021). While the Lunas correctly state our standard of review, they fail to allege the ground (or grounds) upon which we can reverse and provide them relief. "If a point on appeal fails to identify which one of the *Murphy v. Carron* grounds applies, Rule 84.04 directs us to dismiss the point." *Id.*; *see* Rule 84.04(d)(1) (requiring a point relied on state concisely the legal reasons for the claim of reversible error). We do have discretion to review non-compliant briefs *ex gratia* when the argument is "readily understandable." *Ebert*, 627 S.W.3d at 585. In this case, we choose to exercise that discretion to review the Lunas' points under the *Murphy v. Carron* ground that a judgment is not supported by substantial evidence which we discern from the argument portion of their brief is their actual challenge of trial court error.

## Legal Analysis

In their first point, the Lunas argue that the court erred in granting Deutsche Bank an equitable reformation of the deed because Deutsche Bank did not satisfy the elements for equitable reformation of a contract, specifically, they contend there was insufficient evidence of a preexisting agreement between the parties for Las Cumbres Inc. to be a grantor of the deed of trust and borrower under the note.[4]

Reformation is "available upon a showing that, due to either fraud or mutual mistake, the writing fails to accurately set forth the terms of the actual agreement or fails to incorporate the true prior intention of the parties." *Lunceford v. Houghtlin,* 170 S.W.3d 453, 464 (Mo. App. W.D. 2005) (citation omitted).

A party seeking reformation of a deed must show: "(1) a pre-existing agreement between the parties which is consistent with the change sought; (2) a scrivener's mistake in drafting the deed such that it was prepared other than as agreed; and (3) the mistake was mutual as between the grantors and the grantees." *Mo. Land Dev. I, LLC v. Raleigh Dev., LLC*, 407 S.W.3d 676, 687 (Mo. App. E.D. 2013) (citing *Ethridge v. TierOne Bank*, 226 S.W.3d 127, 132 (Mo. banc 2007)).

A circuit "court weighing reformation of an instrument must consider many things, including the wording of the contract as signed by the parties, the relationship of the parties, the subject matter of the contract, . . . the circumstances surrounding the execution of the contract, and its interpretation by the parties." *Lunceford v. Houghlin*, 326 S.W.3d 53, 64 (Mo. App. W.D. 2010) (citation omitted).

---

[4] For brevity, we refer to the Lunas' arguments as made on behalf of both the Lunas and Las Cumbres, Inc.

"[I]n demonstrating a pre-existing agreement between the parties consistent with the change sought, it is sufficient to show that the parties agreed to accomplish a particular object and that the instrument was insufficient to effectuate that intent." *Mo. Land Dev. I, LLC*, 407 S.W.3d at 687. A preexisting agreement can be established by circumstantial evidence, as long as the natural and reasonable inferences drawn from that evidence clearly prove the alleged mistake. *Id.; see also Lunceford,* 326 S.W.3d at 64.

"[T]he power to reform written instruments is limited to the original parties or those claiming in privity under them[.]" Rowland *v. Quevreaux, Trustee of Keith A. Quevreaux Revocable Trust u/t/a Dated July 23, 2012*, 621 S.W.3d 665, 668 (Mo. App. W.D. 2021) (citation omitted). "'Reformation of a written instrument is an extraordinary equitable remedy and should be granted with great caution and only in clear cases of fraud or mistake.'" *Id.* (quoting *Ethridge*, 226 S.W.3d at 132).

On appeal, the Lunas challenge the evidence to support a finding that there was a preexisting agreement between the parties. The Lunas argue that Las Cumbres, Inc. was a corporate entity separate from the Lunas, that the Lunas executed the mortgage loan as individuals, and that, as a result, there was no preexisting agreement between HLB and Las Cumbres, Inc. for Las Cumbres Inc. to be a grantor of the deed of trust and a borrower under the note.

Here, the evidence established that the Lunas were both agents and alter egos of Las Cumbres, Inc. and the Lunas had a practice and pattern of ignoring the corporate separateness of Las Cumbres, Inc. Since 1979, Las Cumbres, Inc. was wholly owned and controlled by the Lunas. The Lunas transferred the titles of their other properties

from Las Cumbres, Inc. back to themselves as part of their winding up process. And yet, Las Cumbres, Inc. still held title to the property. At the time of the loan, Las Cumbres, Inc. had been dissolved for fifteen years.

The Lunas stated under penalty of perjury in their first and third Kansas bankruptcies that they "are the sole proprietors of their real estate company . . . they are not incorporated and do not have a company name." The Lunas used the property as a rental property and identified themselves as owners of the property in rental agreements with tenants. The Lunas directly received rental income from the property and reported that rental income on their tax returns. The court made reasonable inferences from those facts and could disregard the corporate form and separateness of Las Cumbres, Inc. to conclude that a preexisting agreement existed between Las Cumbres, Inc., the Lunas, and HLB. *See Mo. Land Dev. I, LLC*, 407 S.W.3d at 687 (concluding that although original warranty deeds were completed by either the agent or an alter ego, the principal was also bound and the court could "disregard the corporate form and separateness of the legal entities").

The Lunas argue that "no evidence" exists with respect to the Lunas and Las Cumbres, Inc. operating as a single entity at the time of the loan in 2006, and that all of the evidence that the Lunas and Las Cumbres, Inc. operated as a single entity came after the execution of the loan. We have stated, however, that "[s]tatements and conduct of the parties that occur *after* the making of the written instrument may be admissible to establish the facts concerning the issue of a mutual mistake." *Lunceford*, 326 S.W.3d at 67 (citing *Sperrer v. Sperrer*, 573 S.W.2d 693, 695 (Mo. App. 1978)) (emphasis added). Evidence relevant to establish a mutual mistake is not constrained

to evidence predating the agreement that a party seeks to reform.  *Id*.; *see also Everhart v. Westmoreland,* 898 S.W.2d 634, 637-38 (Mo. App. W.D. 1995) (concluding that a court properly considered a subsequently executed proposed settlement agreement, among other evidence, to show a prior agreement in reformation action of a general release).

Finally*,* the Lunas' reliance on *Ethridge v. TierOne Bank*, 226 S.W.3d 127 (Mo. banc 2007) to support their claim that Deutsche Bank was not entitled to reformation of the deed of trust is misplaced.  In *Ethridge,* a husband and wife attempted to refinance a loan on a home they owned as tenants by the entireties.  226 S.W.3d at 129.  However, the deed of trust contained only one signature line with the husband's name typed beneath it.  *Id.* at 130.  The husband signed, and the wife signed the deed of trust below the husband's signature, and both initialed each page.  *Id.*  After the husband's death, the wife made no payments on the loan, and sought a cancellation of the deed of trust because she was not listed as a grantor.  *Id*.  The Supreme Court of Missouri concluded that the deed of trust did not create a lien in favor of the lender because the husband and wife held the property as tenants in the entirety and the deed of trust listed only the husband as grantor.  *Id*. at 131-33.  The Court also found that reformation was not proper because there was no evidence that the wife had a preexisting agreement with the lender to grant a deed of trust, but rather the agreement was always between the husband and the lender.  *Id.* at 132-33.  Additionally, the Court found no errors in drafting.  *Id*. at 133.  Thus, the doctrine of reformation could not be applied.  *Id*.

The same is not true here.  Unlike in *Ethridge*, Deutsche Bank presented clear evidence of both a prior agreement between the parties and a mutual mistake.  It is

undisputed that the property was intended to be conveyed or encumbered by the deed of trust and loan documents as a valid mortgage, but that due to the mutual mistake of not including Las Cumbres Inc. as the vested owner and grantor under the deed of trust, it did not.

Substantial evidence supports the circuit court's judgment reforming the deed to substitute Las Cumbres Inc. as a grantor of the deed of trust and borrower on the note. The Lunas' first point is denied.

In their second point, the Lunas contend that the court erred in granting equitable relief to Deutsche Bank because both Deutsche Bank and its predecessor HLB did not exercise care in protecting its own interests and were therefore not entitled to the equitable relief of reformation.

The court found that HLB, the original lender, relied on incorrect ownership information despite the chain of title being a matter of public record, and that the Lunas were in the best position to know that Las Cumbres, Inc. which they owned and controlled, was still the title owner of the property. The court concluded that HLB justifiably relied on the Lunas' false statements and concluded that HLB was not required to independently investigate a potential borrower's statements.

The Lunas argue that *both* Deutsche Bank and its predecessor, HLB, were negligent by not obtaining a title report for the property. The Lunas argue that HLB was not entitled to rely "solely upon [their] representation" as to ownership because HLB had constructive notice of the recorded warranty deed reflecting that Las Cumbres, Inc. was the title owner of the property. Similarly, the Lunas argue that Deutsche Bank had constructive notice about the title owner of the property, and was

11

"especially derelict and reckless" because it was aware that HLB had not obtained a title report to the property.[5]

The Lunas' claim in this point is based on the general principle that equity will not relieve a party from the consequences of his or her own negligence. *See, e.g., Croy v. Zalma Reorganized Sch. Dist. R–V of Bollinger Cnty.*, 434 S.W.2d 517, 522 (Mo. 1968); *Thompson v. Chase Manhattan Mortg. Corp.*, 90 S.W.3d 194, 205 (Mo. App. S.D. 2002). The Lunas cite various cases in which this principle was applied, but these cases do not persuade us that the court erred in granting equitable reformation. None of these cases place an affirmative duty on a lender to confirm that a potential borrower is telling the truth—the violation of which would provide the wrongdoer with a windfall.

"The general rule is that equitable relief is unavailable for fraudulent representations where the parties deal at arm's length, or a party relies on representations that would arouse the suspicion of one with ordinary prudence, or a party neglects means of information easily discoverable." *Stander v. Szabados*, 407 S.W.3d 73, 84 (Mo. App. W.D. 2013). But, this rule is inapplicable where a party makes a distinct and specific representation to induce the other party to act. *Id.; Premium Fin. Specialists, Inc. v. Hullin*, 90 S.W.3d 110, 115 (Mo. App. W.D. 2002).

"The proposition has now become very widely accepted at law as well as in equity, at least as general doctrine, that a man may act upon a positive representation

---

[5] We note that Deutsche Bank disputes this fact, pointing out in its brief that a loan analyst for Deutsche Bank testified that no title report had been found in the loan file, but that he did not know whether HLB had obtained a title report.

of fact notwithstanding the fact that the means of knowledge were specially open to him." *Tietjens v. Gen. Motors Corp.*, 418 S.W.2d 75, 82 (Mo. 1967) (quoting *Cottrill v. Crum*, 13 S.W. 753, 754-755 (Mo. 1890)).[6] "When distinct and specific representations have been made and are to be acted upon, the representee has the right to rely on the representation even if the parties stand on equal footing or have equal knowledge or means of information relating to the subject matter of the representation." *Iota Mgmt. Corp. v. Boulevard Inv. Co.*, 731 S.W.2d 399, 413 (Mo. App. E.D. 1987). The right to rely on the representation depends on the intent and the strength of the representation. *Cantrell v. Superior Loan Corp.*, 603 S.W.2d 627, 637 (Mo. App. E.D. 1980). Both the representations and the circumstances surrounding the transaction must be viewed. *Id.*

The Lunas made distinct and specific representations of fact: that the information in the loan application and deed of trust documents was correct and that they owned the property. Specifically, the Lunas covenanted that they were "lawfully seised" of the property and had the right to grant and convey the property. The loan application included the provision that it was a federal crime to knowingly make false statements on the form, and the Lunas signed directly below that statement. The Lunas made these representations to induce HLB to make a loan. The Lunas are not excused merely because HLB and Deutsche Bank, with some diligence, could have discovered

---

[6] The Restatement (Second) of Torts (1977) § 540 also explains that a person is justified in relying on a representation of fact "although he might have ascertained the falsity of the representation had he made an investigation." RESTATEMENT (SECOND) OF TORTS § 540 (1977). That section provides an illustration of a seller of land who states it is free from encumbrances and that a buyer's reliance on this factual representation is justifiable, even if he could have "walk[ed] across the street to the office of the register of deeds in the courthouse" and easily have learned of an unsatisfied mortgage. § 540, illus. 1.

that the Lunas did not have title to the property. "The mere presence of opportunities for investigation will not of itself preclude the right of reliance." *Iota*, 731 S.W.2d at 414.

As the Supreme Court of Missouri said:

> If the representation were of a character to induce action, and did induce it, that is enough. It matters not, it has well been declared, that a person misled may be said, in some loose sense, to have been negligent; for it is not just that a man who has deceived another should be permitted to say to him, "You ought not to have believed or trusted me," or "You were yourself guilty of negligence."

*Tietjens*, 418 S.W.2d at 82 (quoting *Cottrill*, 13 S.W. at 755). The same general principle has been expressed in the following way: "'It is no excuse for, nor does it lie in the mouth of the defendant to aver that plaintiff might have discovered the wrong, and prevented its accomplishment, had he exercised watchfulness, because this is but equivalent to saying 'You trusted me; therefore I had the right to betray you.'" *Id.* (quoting *Pomeroy v. Benton*, 57 Mo. 531, 542-43 (Mo. 1874)).

As we have already explained, the circuit court properly applied the law and granted reformation of the deed by concluding there was a preexisting agreement and a mutual mistake. The Lunas provided false information in their loan application and subsequent deed of trust documents, they received $85,800.00 from HLB, the benefit of an automatic stay in bankruptcy proceedings by making the same false representations, but they now claim that HLB and Deutsche Bank acted negligently and should bear the cost of *their* false statements. Equity does not so require and does not permit the Lunas from taking advantage of their false statements made to the detriment of HLB and Deutsche Bank.

Point two is denied.

14

In their third point, the Lunas contend that the court erred in applying judicial estoppel to preclude the Lunas from taking the position in the reformation action that Las Cumbres, Inc. owned the property at the time of the HLB loan and that the Lunas had no title in the property then to grant a deed of trust.

The court found that in four different bankruptcy cases, the Lunas took the position that they, not Las Cumbres, Inc. were the title owners of the property, that the mortgage loan against the property was valid and undisputed, and that the Lunas benefited from the automatic stay issued in the bankruptcy action. The court found that position inconsistent with the Lunas' argument in the reformation action and that Deutsche Bank would be unfairly prejudiced if unable to enforce the deed of trust.

"Judicial estoppel will lie to prevent litigants from taking a position, under oath, in one judicial proceeding, thereby obtaining benefits from that position in that instance and later, in a second proceeding, taking a contrary position in order to obtain benefits. . . at that time." *Watterson v. Wilson*, 628 S.W.3d 822, 826 (Mo. App. W.D. 2021) (citation omitted). "[J]udicial estoppel is not a cause of action with elements that must be proven and that are prerequisites to its application." *Vacca*, 575 S.W.3d at 235. Rather, "it is a flexible, equitable doctrine intended to preserve the integrity of the courts." *Id.*

> "All factors that are relevant should be considered by the Court, but once a party takes truly inconsistent positions, there are no inflexible prerequisites or an exhaustive formula for determining the applicability of judicial estoppel." Factors to consider include: (1) a party's later position is clearly inconsistent with its earlier position; (2) whether the party was successful in persuading a court to accept the party's earlier position such that judicial acceptance of an inconsistent position in a later proceeding would create the perception that a court was misled; and (3) whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party

15

if not estopped. These factors "are guideposts, not elements, intended to assist courts in identifying when judicial estoppel should be applied to preserved the integrity of the judicial process and prevent litigants from playing 'fast and loose' with the courts."

*Banks v. Kansas City Area Transp. Auth.,* 637 S.W.3d 431, 445 (Mo. App. W.D. 2021) (citing and quoting *Vacca*, 575 S.W.3d at 232-33, 235- 236).

The court did not abuse its discretion in applying judicial estoppel to prevent the Lunas from arguing that Las Cumbres Inc. was the sole owner of the property, that it was not a party to the deed of trust, and that therefore the deed was unenforceable. In earlier litigation, the Lunas took the position (which was false) that they, not Las Cumbres, Inc. were the title owners of the property. The Lunas have done so, under penalty of perjury, in four different bankruptcy cases. In those cases, they failed to disclose the existence of Las Cumbres Inc., stating instead that they operated as a sole proprietorship. The Lunas have stated under penalty of perjury that they were the obligors under the loan and stated that the validity of loan was not disputed. In addition, Deutsche Bank was an active participant in the Lunas' bankruptcies and filed two proof of claims and a motion for relief from the automatic stay. No party objected to the proof of claims or motion for relief from the automatic stay. Deutsche Bank relied on the Lunas' statements as to the validity of the mortgage. Now, however, the Lunas take the inconsistent position that Las Cumbres, Inc. was the sole property owner, that Las Cumbres, Inc. was not a party to the deed of trust, and therefore the deed of trust cannot be reformed and Deutsche Bank cannot enforce the deed of trust against the Lunas.[7] These are clearly inconsistent positions.

---

[7] It is significant to note that after this case was initiated, Guillermo and Lourdes Luna, as president and secretary, respectively, for Las Cumbres, Inc., executed a general warranty deed attempting to convey the property to Las Cumbres, LLC. Las Cumbres, Inc. was specifically listed as the grantor on

Second, the Lunas were successful in persuading courts to accept their earlier position as to the property's ownership. Bankruptcy courts accepted the Lunas' earlier position and gave the Lunas the benefit of the automatic stay as it related to the property for nearly seven years.

Finally, the Lunas, in asserting these inconsistent positions, would derive an unfair advantage and Deutsche Bank would be prejudiced if unable to enforce the deed of trust on the property. The Lunas and Las Cumbres, Inc., which the Lunas own and control, should not be rewarded for misleading HLB, Deutsche Bank, and various bankruptcy courts.[8]

For all of these reasons, the circuit court did not abuse its discretion in applying judicial estoppel.

---

the deed, even though the corporation had been dissolved. Although this deed was signed in 2018, this further illustrates the troublesome and inconsistent positions the Lunas have taken with respect to the ownership of the property.

[8] In their brief, the Lunas spend considerable time arguing that the court should not have applied judicial estoppel because the doctrine only precludes a "party" who took a position and benefitted from that position in an earlier legal proceeding from taking a contrary position in a subsequent legal proceeding. The Lunas argue that Las Cumbres, Inc. was not a party in the Lunas' earlier bankruptcies, the Lunas were acting on their own behalf, and therefore the Lunas' representations in those proceedings should not preclude Las Cumbres, Inc. from taking a different position in this reformation action. However, this argument ignores the fact that the Lunas have consistently failed to respect the corporate form as to Las Cumbres, Inc. Further, in its judgment, the court specifically precluded—and named—*the Lunas* from opposing the relief requested. Even if we were to accept the argument, which we do not, that Las Cumbres, Inc. should have not been judicially estopped from opposing the relief requested, it would have no practical effect on the outcome of the case. A party, the Lunas, would still need to take the position that Deutsche Bank did not have a valid lien against the property because of the defective deed of trust. As we have already explained, all parties were correctly estopped from taking that position.

## Conclusion

Substantial evidence supports the circuit court's judgment reforming the deed. The circuit court's judgment is affirmed.

_____
Janet Sutton, Judge

Hardwick, P.J. and Chapman, J. concur.