**SAXONY LUTHERAN HIGH SCHOOL, INC., and Save Our Children's Health, Inc., Respondents,**

v.

**MISSOURI LAND RECLAMATION COMMISSION and Heartland Materials, LLC, Appellants.**

**Nos. WD 74994, WD 75017.**

Missouri Court of Appeals, Western District.

Jan. 15, 2013.

Rehearing Denied March 5, 2013.

**54**

Stephen G. Jeffery and Bruce A. Morrison, Clayton, MO, for Respondents.

Chris Koster, Attorney General, Jennifer S. Frazier, Deputy Chief Counsel, Agriculture & Environment Division, Jefferson City, MO, for Appellant Missouri Land Reclamation Commission.

Lowell D. Pearson, Harvey M. Tettlebaum, and R. Ryan Harding, Jefferson City, MO, for Appellant Heartland Materials, LLC.

Before Division IV: JAMES EDWARD WELSH, Chief Judge, MARK D. PFEIFFER, Judge, and ABE SHAFER, Special Judge.

MARK D. PFEIFFER, Judge.

This is a case examining the issue of standing before an administrative agency; more particularly, standing before the Missouri Land Reclamation Commission ("the Commission"). Heartland Materials, LLC ("Heartland") and the Commission appeal a judgment of the Circuit Court of Cole County ("trial court") reversing an order of the Commission, which had previously concluded that Respondents Saxony Lutheran High School, Inc. ("Saxony") and Save Our Children's Health, Inc. ("SOCH") lacked standing to be entitled to a formal public hearing before the Commission. We affirm the trial court's grant of summary judgment in favor of Respondents.

### Statement of Facts[1]

■ Appellant Heartland is a company in the business of mining limestone. On October 4, 2010, it submitted a limestone mining permit application to the staff director of the Commission ("the Director") for a proposed 161–acre limestone quarry. Respondent Saxony is an incorporated and accredited private Lutheran high school located just north of, and adjacent to, the proposed quarry. Respondent SOCH is a Missouri not-for-profit corporation organized to enhance and protect the health, safety, and livelihood of the members in the community from the impact of open quarry activities and has members that live near the proposed Heartland quarry site.[2]

---

1. In an appeal from a motion for summary judgment, we review the facts in the light most favorable to the non-moving party. *State ex rel. Nixon v. Hughes*, 281 S.W.3d 902, 906 (Mo.App. W.D.2009).

2. In Missouri, an entity has "associational standing" to bring a challenge on behalf of its members if: "1) its members would otherwise have standing to bring suit in their own right; 2) the interests it seeks to protect are germane to the organization's purpose; and 3) neither

On January 5, 2011, the Director recommended that Heartland's land reclamation permit be issued. Saxony and SOCH timely opposed Heartland's requested permit and, pursuant to section 444.773.3 [3] of the Missouri Land Reclamation Act, requested a public meeting. Heartland did not agree to a public meeting.[4] The Director then referred the matter to the Commission for a formal public hearing.

On January 27, 2011, before granting the formal public hearing, the Commission held a meeting to determine whether Saxony and SOCH possessed standing.[5] At this meeting, the Commission permitted the parties to present evidence on the topic of whether Saxony and SOCH had provided "good faith evidence of how their health, safety, or livelihood will be unduly impaired by the issuance of the permit."

On February 7, 2011, the Commission decided that neither Saxony nor SOCH had provided good faith evidence of how its health, safety or livelihood would be unduly impaired by the issuance of the surface mining permit to Heartland, and therefore, the Commission refused to conduct a formal public hearing. The Commission issued a surface mining permit to Heartland. Saxony and SOCH then filed a timely Petition for Judicial Review and Declaratory Judgment against the Commission. Heartland intervened.

The trial court entered summary judgment, concluding as a matter of law that Saxony and SOCH had established standing; thus, the trial court's judgment directed the Commission to conduct a formal public hearing. The Commission and Heartland appeal from the trial court's judgment.

### Standard of Review[6]

■ "Summary judgment is appropriate only when the moving party demon-

---

the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Mo. Bankers Ass'n v. Dir. of Mo. Div. of Credit Unions*, 126 S.W.3d 360, 363 (Mo. banc 2003) (citing *Mo. Health Care Ass'n v. Att'y Gen.*, 953 S.W.2d 617, 620 (Mo. banc 1997)). In this appeal, appellants do not challenge the "associational standing" of SOCH to demand a hearing before the Commission, though they did below. Thus, we need not and do not address the issue of "associational standing" in our ruling today. *See Lanham v. Div. of Emp't Sec.*, 340 S.W.3d 324, 327 (Mo.App. W.D.2011) ("An issue not raised in the points relied on or argued in the argument section of the brief is deemed abandoned on appeal.").

3. Unless indicated otherwise, all statutory references are to the Revised Statutes of Missouri 2000, as updated through the 2011 Cumulative Supplement.

4. Specifically, in numbered paragraph 16 of Heartland's Answer to Petition for Judicial Review, Heartland states: "Heartland admits that [the Commission] sent a letter asking Heartland whether it would conduct a public meeting regarding its permit application. Heartland further admits that it declined to conduct such a public meeting."

5. At this same meeting, the Commission heard evidence on whether Saxony and SOCH had standing to request a formal public hearing concerning the permit application of another hopeful quarry operator, J.W. Strack, LLC ("Strack"). The Strack plant was to be just north of Saxony (which would then lie in between the two proposed quarry sites), and Saxony and SOCH presented *identical* evidence with respect to *both* the Heartland and the Strack permit applications. The Commission found that Saxony possessed standing sufficient to merit a formal public hearing with respect to the Strack permit, but found that Saxony had failed to establish standing with respect to the Heartland application. Though technically irrelevant to the current proceeding, the inconsistency of the Commission's rulings begs the question of its "arbitrariness."

6. All of the parties in this case, including the Commission, agree that this matter should be reviewed as a non-contested case, since the Commission did not hold a formal hearing.

strates that there is no genuine dispute as to the facts and that the facts as admitted show a legal right to judgment for the movant." *Bob DeGeorge Assocs., Inc. v. Hawthorn Bank,* 377 S.W.3d 592, 596 (Mo. banc 2012) (internal quotation omitted). "The propriety of a summary judgment is purely an issue of law, and [an appellate court's] review is essentially *de novo.*" *Id.* "The criteria on appeal for testing the propriety of summary judgment are no different from those which should be employed by the trial court to determine the propriety of sustaining the motion initially." *FH Partners, LLC v. Complete Home Concepts, Inc.,* 378 S.W.3d 387, 393 (Mo. App. W.D.2012) (internal quotation omitted). In this case, the trial court determined whether Saxony and SOCH had established, as a matter of law, standing to participate in a formal public hearing. Whether a party has established standing before an administrative agency is itself a question of law that is reviewed *de novo. St. Louis Ass'n of Realtors v. City of Ferguson,* 354 S.W.3d 620, 622 (Mo. banc 2011); *Christian Health Care v. Mo. Dep't of Health & Senior Servs.,* 229 S.W.3d 270, 276 (Mo.App. W.D.2007). Finally, if summary judgment is sustainable on any theory, even one entirely different from that addressed by the trial court, it should be sustained on appeal. *Bolivar Insulation Co. v. Bella Pointe Dev., L.L.C.,* 166 S.W.3d 610, 614 (Mo.App. S.D.2005).

In non-contested cases, the trial court does not simply review the administrative record but receives evidence on the merits of the case and makes its own determination of the validity of the agency's decision. § 536.150; *State ex rel. Fortney v. Joiner,* 797 S.W.2d 848, 851–52 (Mo.App. W.D.1990). Therefore, this court, on appeal, reviews the judgment of the trial court, not the decision of the administrative agency. *Barry Serv. Agency Co. v. Manning,* 891 S.W.2d 882, 887 (Mo.App. W.D. 1995). We need not determine the propriety of the parties' assessment of this matter as a

## Analysis

Heartland and the Commission[7] raise three points on appeal. In Point I, Heartland and the Commission contend that Saxony and SOCH failed to provide good faith evidence sufficient to meet the standing requirement necessary for the Commission to grant a hearing. In Points II and III, Heartland and the Commission argue that, even assuming that standing has been established, the Commission has discretion to decide whether a hearing is warranted, and the Commission's refusal to grant a formal public hearing was not an abuse of discretion.

## Statutory and Regulatory Procedure for Land Reclamation Permits in Missouri

In Missouri, section 444.773 governs the statutory procedure for the application for, and objections to, the issuance of land reclamation permits. Section 444.773.1 requires that all permit applications be filed with, and investigated by, the Director. Section 444.773.2 describes the permit applicant's administrative recourse if the Director recommends denial of the permit application. Section 444.773.3 describes, among other things, the administrative recourse of those objecting to the issuance of the permit when the Director has recommended issuance of the permit. Section 444.773.4 describes the burden of proof at

non-contested case, however, because the question of whether Saxony and SOCH have established standing as a matter of law would be subject to *de novo* review whether we were to review the Commission's determination that there was no standing or whether we were to review the trial court's grant of summary judgment.

7. Heartland adopted the Commission's appellate brief and arguments as its own.

any formal public hearing conducted by the Commission.

Section 444.530.1 states that the Commission may "[a]dopt and promulgate rules and regulations respecting the administration of sections 444.500 to 444.789." The Commission has, in fact, adopted and promulgated such rules and regulations with respect to the procedure for administrative recourse—whether it is recourse for the permit applicant or the party objecting to the permit application ("the petitioner"). The relevant regulatory rules for this case are found at 10 CSR 40–10.080. Subsection 1 describes the "public meeting" process that is conducted by the Director. Subsection 2 describes the rules for establishing standing for a formal public hearing. Subsection 3 describes the formal hearing process conducted by the Commission.

Because the permit applicant, Heartland, refused to agree to a public meeting upon a request by the petitioners, Saxony and SOCH, the following excerpts from 10 CSR 40–10.080 are relevant:

From 10 CSR 40–10.080(1)(A):

If the applicant does not agree to the public meeting [requested by the petitioner(s) ] then the petition [objection to the permit application by the petitioner(s) ] may be referred to the commission [by the Director] for a formal public hearing as directed by subsection (3)(B) of this rule. . . .

From 10 CSR 40–10.080(2)(A)–(B):

For a formal public hearing to be granted by [the Commission], the petitioner must first establish standing.

The petitioner is said to have standing to be granted a formal public hearing if the petitioner *provides good faith evidence of how their health, safety, or*

*livelihood will be unduly impaired by the issuance of the permit.*

(Emphasis added.)

Once standing is established and a formal public hearing is scheduled, 10 CSR 40–10.080(3)(B) describes a different evidentiary burden of proof at the formal public hearing:

The burden of establishing an issue of fact regarding the impact, if any, of the permitted activity on a hearing petitioner's health, safety or livelihood shall be on that petitioner by competent and substantial scientific evidence on the record. . . . Once such issues of fact have been established, the burden of proof for those issues is upon the applicant for the permit.

■ Notably, however, once the applicant refuses the petitioners' request for a public meeting and the Director exercises his [8] discretion to refer the petitioners' objection to the Director's permit issuance recommendation, there is no discretion on the part of the Commission to refuse a formal public hearing unless the Commission correctly concludes that the petitioners lack standing to be entitled to a formal public hearing. Once the petitioners establish standing, they are entitled to a formal public hearing before the Commission.

### Standing for a Formal Public Hearing

■ In Point I, Heartland and the Commission argue that the trial court erred in concluding, as a matter of law, that Saxony and SOCH established standing necessary for a formal public hearing.

■ As stated above, our *de novo* review of the trial court's judgment on this issue is limited to determining if the undisputed material facts demonstrate, as a

8. The Director, at all relevant times related to this proceeding, was Mike Larsen.

matter of law, that Saxony and SOCH have established standing. Stated in terms of 10 CSR 40–10.080(2)(B), the issue is whether Saxony and SOCH have "provide[d] good faith evidence of how their health, safety, or livelihood will be unduly impaired by the issuance of the permit." Notably, the evidentiary threshold for establishing standing is nothing more than "providing good faith evidence," which is less stringent than the 10 CSR 40–10.080(3)(B) formal public hearing burden of production on the petitioners of establishing an issue of fact regarding the alleged negative impact by "competent and substantial scientific evidence on the record." [9]

Here, it is undisputed that the petitioners "provided" a significant amount of "good faith evidence of how their health, safety, or livelihood will be unduly impaired by the issuance of the permit."

Saxony and SOCH "provided" the following "good faith" evidence:

Dr. Jennifer Lowry, a Pediatric Environmental Health Specialist from Children's Mercy Hospital in Kansas City, whose practice includes treating children with particulate matter exposures, testified that particulate matter in the air, even at levels below EPA standards, can cause harm to those who breathe it. She testified that children, including high school students, were particularly at risk, because the lungs do not fully develop until late adolescence or early adulthood. Dr. Low-

ry also testified that the elderly and people with respiratory conditions would be particularly susceptible to these health risks.

Peter deFur, Ph.D., testified that particulate matter, such as dust emitted from the rock mining process, can cause serious adverse health effects. He also testified that limestone quarrying activities, which include mining, crushing, screening, and hauling operations, are a known source of coarse and fine particulate matter and are, therefore, a matter of human health concern in communities located close to limestone quarries.

Several of Saxony's students and SOCH's members testified that they (or their children) currently suffer from respiratory conditions that are exacerbated by environmental conditions such as dust. They testified that they were concerned that the increased limestone dust that would result from the operation of the proposed quarry would worsen their respiratory conditions.

Saxony's principal testified that Saxony lies in a position that is normally downwind from the proposed Heartland quarry. He also testified that Saxony's students participate in numerous outdoor sporting activities and would be harmed by quarry dust; that Saxony students go outdoors for P.E. classes and would be harmed by quarry dust; that Saxony hosts eight outdoor Missouri State High School Activities Association-sponsored activities where participants, spectators, and officials would be

---

9. The Commission and Heartland urge this court, in interpreting the good faith evidence standard of 10 CSR 40–10.080(2)(B), to require actual proof establishing that their health, safety and livelihood will, in fact, be unduly impaired. This argument is untenable, for to do so would actually create an evidentiary burden upon a petitioner on the preliminary issue of standing that is greater than the petitioner's evidentiary burden at a formal public hearing before the Commission.

For, even at a formal public hearing, a petitioner's burden is only to establish "issues of fact" on the negative impact of the permitted activity through "competent and substantial scientific evidence" (i.e., burden of production) but, upon doing so, it is the permit applicant who ultimately bears the burden of persuasion on those issues. 10 CSR 40–10.080(2)(B); *see also Lake Ozark/Osage Beach Joint Sewer Bd. v. Mo. Dep't of Natural Res.*, 326 S.W.3d 38, 43 (Mo.App. W.D.2010).

negatively impacted by quarry dust; and that quarry dust would cause additional maintenance costs to keep the school clean. Finally, the principal testified that in the time since the quarry was proposed, Saxony has seen its first drop in enrollment in eleven years.

Saxony's treasurer and its development director testified that the proposed quarry would negatively impact Saxony's financial health and livelihood, inhibiting its ability to raise funds.

Heartland and the Commission maintain that Saxony and SOCH merely presented evidence of students', faculty's, and members' "beliefs and concerns" and that such beliefs and concerns do not constitute good faith evidence. However, the concerns of Saxony's and SOCH's witnesses are not mere conjecture. The student and resident witnesses currently suffer from respiratory issues and testified that their issues are exacerbated by environmental conditions including dust. And, the concerns and beliefs of Saxony's students and faculty and the neighboring resident SOCH members were supported by the testimony of expert witnesses. Accordingly, Saxony and SOCH provided good faith evidence that the students attending the high school and residents living near the proposed quarry sites would face an increased risk of incurring or worsening respiratory illnesses if the quarry permit were issued.

In sum, we agree with the trial court that, as a matter of law, Saxony and SOCH provided good faith evidence of a future undue impairment sufficient to establish standing for a hearing as required by sec-

tion 444.773 and 10 CSR 40–10.080.[10] Heartland's and the Commission's first point is denied.

## Commission's Discretion

■ In Points II and III, Heartland and the Commission argue that sole discretion to grant a hearing lies with the Commission, basing their argument on the word "may" used in the statute: "The land reclamation commission *may* grant a public hearing to formally resolve concerns of the public." § 444.773.3 (emphasis added). The fatal defect in this argument is that Heartland and the Commission ignore the sentence preceding that upon which they rely. In context, then, section 444.773.3 actually states:

> If the public meeting does not resolve the concerns expressed by the public, any person whose health, safety or livelihood will be unduly impaired by the issuance of such permit may make a written request to the land reclamation commission for a formal public hearing. The land reclamation commission may grant a public hearing to formally resolve concerns of the public.

(Emphasis added.)

■ Thus, the Commission's discretion on the topic of granting a formal public hearing only arises if a "public meeting" has first taken place. Here, it is undisputed that Saxony and SOCH requested a "public meeting" and Heartland refused to agree to a "public meeting." Thus, as we stated previously, in that scenario, it is the Director—not the Commission—that possesses the discretion to refer

---

**10.** Though Heartland and the Commission wish to challenge the veracity and persuasive force of this good faith evidence, this is not the stage of the process to do so. At the standing stage of the process, a petitioner must merely "provide[ ] good faith evidence of how their health, safety, or livelihood will be unduly impaired by the issuance of the

permit." 10 CSR 40–10.080(2)(B). That the veracity or persuasive force of this evidence may be challenged is a topic for a formal public hearing, where the permit applicant will bear the burden of persuasion after the petitioner has satisfied its burden of production in establishing issues of fact.

the permit application matter to the Commission for a formal public hearing. 10 CSR 40–10.080(1)(A). Here, the Director did just that. Upon the Director doing so, and once standing is established pursuant to the requirements of 10 CSR 40–10.080(2)(B), the Commission possesses no discretion to refuse a formal public hearing that will be guided by the evidentiary burdens of 10 CSR 40–10.080(3)(B).

Points II and III are denied.

## Conclusion

The judgment of the trial court is affirmed, and consistent with that judgment, the Commission is directed to conduct a formal public hearing in accordance with 10 CSR 40–10.080 and as otherwise consistent with this opinion.

JAMES EDWARD WELSH, Chief Judge, and ABE SHAFER, Special Judge, concur.