

# IN THE MISSOURI COURT OF APPEALS
# WESTERN DISTRICT

FEDERAL NATIONAL MORTGAGE
ASSOCIATION and NATIONSTAR
MORTGAGE, LLC,

       Appellants,

v.

JEFFREY A. CONOVER, et al.,

       Respondents.

)
)
)
)
)
)
)
)
)
)
)
)
)
)

**WD76276**
**(Consolidated with WD76347)**

**OPINION FILED:**
**January 14, 2014**

**Appeal from the Circuit Court of Clay County, Missouri**
**The Honorable Karen Krauser, Judge**

**Before Division II:** Mark D. Pfeiffer, Presiding Judge, and
Joseph M. Ellis and Victor C. Howard, Judges

  The Federal National Mortgage Association ("Fannie Mae") and Nationstar Mortgage,

LLC ("Nationstar"), appeal the "final judgment"[1] of the Circuit Court of Clay County, Missouri

("trial court"), dated February 11, 2013, (1) granting summary judgment to Jeffrey and Angela

Conover ("the Conovers") in their wrongful foreclosure/quiet title claim against Fannie Mae and

---

[1] In the record on appeal, there are numerous interlocutory orders, partial judgments, or other documents delineated as "judgments" that pre-date the trial court's "final judgment" dated February 11, 2013. None of those pre-dated orders or purported "judgments" were final and appealable rulings of the trial court. The only judgment below that constituted a final and appealable judgment for purposes of appellate jurisdiction of an appeal before this court is the trial court's "final judgment" dated February 11, 2013.

Nationstar and (2) dismissing Fannie Mae's unlawful detainer petition and Fannie Mae and Nationstar's wrongful foreclosure/quiet title counterclaim. We reverse and remand.

## Factual and Procedural History[2]

The Conovers executed a Promissory Note ("the Note") in the sum of $213,000 to their originating lender, Merrlin Mortgage Corporation ("Merrlin"). The Note was secured by a Deed of Trust ("Deed of Trust") on certain real property commonly known and numbered as 10223 North Hedges Avenue, Kansas City, Missouri ("the Property"). The Deed of Trust was recorded in the office of the Clay County Recorder of Deeds. Merrlin executed an allonge[3] to the Note, specifically endorsing the Note to CitiMortgage, Inc. ("CitiMortgage"). The allonge to the Note also contains a blank endorsement executed by CitiMortgage. Nationstar claims to have subsequently acquired the Note and Deed of Trust from CitiMortgage (though the record is less than "undisputed" about its acquisition). At minimum, though, the record does contain documentation attached in support of the Conovers' Motion for Summary Judgment that purports to declare that Nationstar was the holder of all rights related to the Note and Deed of Trust prior to appointing a successor trustee under the Deed of Trust and initiating foreclosure on the Property.[4]

Nationstar later instituted foreclosure proceedings against the Conovers, and, through its attorney-in-fact, Martin, Leigh, Laws & Fritzlen, P.C. ("MLLF"), signed an Appointment of

---

[2] On appeal from the grant of a motion for summary judgment, we view the facts in the light most favorable to the nonmovant—in this case, Fannie Mae and Nationstar. *C-H Bldg. Assocs., LLC v. Duffey*, 356 S.W.3d 862, 863 n.1 (Mo. App. W.D. 2012).

[3] An "allonge" is "'[a] piece of paper annexed to a negotiable instrument or promissory note on which to write endorsements for which there is no room on the instrument itself.'" *Bremen Bank & Trust Co. of St. Louis v. Muskopf*, 817 S.W.2d 602, 607 (Mo. App. E.D. 1991) (quoting BLACK'S LAW DICTIONARY 100 (4th ed.1968)).

[4] Frankly, for purposes of Rule 74 and strict compliance thereto, this is a significant material fact that remains in dispute and which must be resolved by the trial court upon remand. As the oral argument of this case demonstrated, the parties disagree about virtually all facts that are significant to this case and the parties are equally indignant with each other about what they each perceive to be unreasonable positions of their opponents as to the "undisputed" facts.

Substitute Trustee ("the Appointment"), which identified MLLF as the Grantee and Substitute or Successor Trustee. The document was recorded in the office of the Clay County Recorder of Deeds. The Appointment states that "Nationstar Mortgage, LLC, ('Grantor') is the holder of the Deed of Trust." The Appointment further states that:

> WHEREAS, said Deed of Trust provides that the legal holder of the Deed of Trust, at its option, and for any reason, shall have the power successively to remove the Trustee and appoint a Successor Trustee to any Trustee appointment thereunder by any instrument, who shall succeed to all the title, power and duties conferred upon the Trustee therein and by applicable law.

MLLF conducted a foreclosure sale and sold the Property to Fannie Mae for $190,110.66.

Thereafter, Fannie Mae filed in the Associate Circuit Division of the Circuit Court of Clay County a verified petition for unlawful detainer following foreclosure against the Conovers. Subsequently, the Conovers filed in the Circuit Court of Clay County a verified petition for wrongful foreclosure, quiet title, breach of fiduciary duty, and violations of the Missouri Merchandising Practices Act against Fannie Mae, Nationstar, and MLLF.[5] Fannie Mae and Nationstar filed an Answer and a Counterclaim in the wrongful foreclosure/quiet title case, alleging breach of the Note. The cases were eventually consolidated[6] and the Clay County Presiding Judge assigned the associate court division to hear the consolidated cases on the record under the practices and procedures before circuit judges, as set forth in Local Rule 6.4.1 of the 7th Judicial Circuit.[7]

---

[5] The Conovers later voluntarily dismissed all claims against MLLF and voluntarily dismissed their counts against Fannie Mae and Nationstar alleging breach of fiduciary duty and violations of the Missouri Merchandising Practices Act.

[6] Fannie Mae and Nationstar have not challenged consolidation of the wrongful foreclosure/quiet title action with the unlawful detainer action; therefore, we express no opinion about whether consolidation was proper or could have been challenged in light of the intended summary nature of a statutory unlawful detainer proceeding. *See State ex rel. Deutsche Bank Nat'l Trust Co. v. Chamberlain*, 372 S.W.3d 24, 28 (Mo. App. W.D. 2012).

[7] "All cases assigned to Associate Circuit Judges but not within the original jurisdiction of an Associate Circuit Judge shall be heard on the record and under the practices and procedures regularly applicable before Circuit Judges." MO. 7TH JUD. CIR. R. 6.4.1. Accordingly, section 512.180.1 governing rights relating to a request for trial de novo was, by the express terms of section 512.180.1, inapplicable as a result of the assignment of the

The Conovers filed a Motion for Summary Judgment regarding their wrongful foreclosure/quiet title claims. Contemporaneously, Fannie Mae and Nationstar filed a Cross-Motion for Summary Judgment in the wrongful foreclosure/quiet title case, asserting that Nationstar was the holder of the Note at the time of the foreclosure upon which the wrongful foreclosure/quiet title claims were based and, therefore, had the right to foreclose upon the Property and issue a Trustee's Deed to Fannie Mae. The trial court granted the Conovers' Motion for Summary Judgment and denied Fannie Mae and Nationstar's Cross-Motion for Summary Judgment, expressly stating in the judgment that the foreclosure sale was void "because the Appointment [of the successor trustee] was made in a manner contrary to the power of sale provision in the Deed of Trust, and that the foreclosure sale was conducted by a non-Trustee in violation of the Deed of Trust."[8]

Pursuant to motions to dismiss, the trial court dismissed Fannie Mae's unlawful detainer petition and Fannie Mae and Nationstar's counterclaim related to the Conovers' claims for wrongful foreclosure and quiet title.

The trial court then determined that all claims in the consolidated cases were resolved (via previous rulings on motions for summary judgment and motions to dismiss) and thus, on February 11, 2013, entered "final judgment": (i) in favor of the Conovers and against Fannie Mae and Nationstar for wrongful foreclosure; (ii) in favor of the Conovers and against Fannie

---

consolidated cases to the associate circuit division to hear the consolidated cases. Instead, "any person aggrieved by a judgment rendered in [a case assigned to an associate circuit judge under procedures applicable before circuit judges] may have an appeal upon [the] record to the appropriate appellate court." § 512.180.2. Thus, we decline the Conovers' invitation to dismiss this appeal for failure to comply with section 512.180.1 and, instead, conclude that the only appealable final judgment in this consolidated case was the trial court's judgment of February 11, 2013.

[8] Both parties have raised Rule 74 procedural issues with regard to the parties' competing motions for summary judgment and responses thereto. Our review of the competing motions and responses reflects that neither party appears to be free from Rule 74 criticism. Nonetheless, the trial court did not base its rulings upon procedural defects and neither have we in our ruling today. Upon remand, both parties would benefit from a close review of Rule 74, at least to the extent that either or both parties wish to seek relief or file responses to relief requested pursuant to Rule 74.

Mae and Nationstar to quiet title in the name of the Conovers; and (iii) in favor of the Conovers and against Fannie Mae on the petition for unlawful detainer.

Fannie Mae and Nationstar appeal from the trial court's "final judgment." On appeal, Fannie Mae and Nationstar raise two points asserting trial court error in granting the Conovers' motion for summary judgment, and two points asserting trial court error in granting the Conovers' motion to dismiss Fannie Mae's petition for unlawful detainer with prejudice. Fannie Mae and Nationstar's first point is dispositive of this appeal. Accordingly, we need not and do not address appellants' other points on appeal.

**Standard of Review**

"The propriety of summary judgment is purely an issue of law." *ITT Commercial Fin. Corp. v. Mid-Am. Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993). Accordingly, when considering appeals from summary judgments, we do not defer to the trial court's order and, instead, review the matter *de novo*. *Id.* We review the record in the light most favorable to the party against whom judgment was entered and accord the non-movant the benefit of all reasonable inferences from the record. *Id.* "The criteria on appeal for testing the propriety of summary judgment are no different from those which should be employed by the trial court to determine the propriety of sustaining the motion initially." *Id.* To show a right to judgment as a matter of law, "[a] 'claimant' must establish that there is no genuine dispute as to those material facts upon which the 'claimant' would have had the burden of persuasion at trial." *Id.* at 381. Summary judgment is "an extreme and drastic remedy and great care should be exercised in utilizing the procedure" because it "borders on denial of due process in that it denies the opposing party his day in court." *Id.* at 377 (internal quotation omitted).

5

**Analysis**

**Point I – Validity of Appointment of Successor Trustee**

In their first point, Fannie Mae and Nationstar assert that the trial court erred in granting the Conovers' motion for summary judgment[9] in the wrongful foreclosure action because there was no genuine dispute of material fact regarding the legality of the appointment of the successor trustee.[10] Fannie Mae and Nationstar contend that Nationstar held the negotiable Note, was the legal assignee of the Deed of Trust, and had the power to appoint the successor trustee. Fannie Mae and Nationstar further claim that the successor trustee conducted a valid foreclosure sale that conveyed good title to Fannie Mae in accordance with the provisions of the Note, Deed of Trust, and Article 3 of the Missouri Uniform Commercial Code.

The Conovers contend that its summary judgment motion raised a narrow issue concerning the Deed of Trust's power of appointment of a successor trustee. They argue that because Nationstar was not the Conovers' "Lender," but nonetheless appointed the successor trustee, the failure to comply with the terms of the Deed of Trust's power of sale provision voids the successor trustee's sale and deed transfer to Fannie Mae.

The Conovers rely upon the Deed of Trust securing the Note to argue that only the "Lender" may invoke the power of sale and appoint the successor trustee. They contend that

---

[9] Fannie Mae and Nationstar also claim in their first point that the trial court erred in denying their cross-motion for summary judgment. An order denying a motion for summary judgment is not a final judgment and, therefore, is not reviewable on appeal unless the merits of the denied motion for summary judgment are intertwined with the propriety of an appealable order granting summary judgment to another party; under those circumstances, the denial of a motion for summary judgment may be reviewed on appeal. *Reeves v. Allstate Ins. Co.*, 327 S.W.3d 592, 598 (Mo. App. S.D. 2010). Here, the record simply has not been sufficiently developed to permit summary judgment on behalf of either party. And, our ruling today is not so intertwined with the merits of Fannie Mae and Nationstar's cross-motion for summary judgment to enable us to review their motion. Hence, we do not do so.

[10] We disagree. On the record presently before us, we conclude that the facts relating to Nationstar's status as a "holder of the instrument" are both material and *disputed* by the parties. *See* n.3. However, because we review the facts in the light most favorable to the nonmovant—Fannie Mae and Nationstar—the "light most favorable" lens reflects that, for the purposes of our review of this appeal, Nationstar was the "holder of the instrument" at all relevant times related to this case. And, as we explain in our ruling today, Nationstar's "holder" status has implications regarding its rights under the Deed of Trust, including the appointment of a successor trustee.

only the "owner" of the Note meets this description. Their argument also rests, in part, on separating the Note from the Deed of Trust so that the holder of the Deed of Trust cannot foreclose unless it is also "owner" of the Note. The Conovers' contentions are inconsistent with the language in the Note and Deed of Trust and with applicable Missouri law.

The Conovers' Note and Deed of Trust must be considered together. "[W]here the parties to a note contemporaneously execute another written contract, such as a deed of trust, which is connected with the note by direct reference or by necessary implication, the two instruments should be considered together as the entire contract." *Pitman Place Dev., LLC v. Howard Invs., LLC*, 330 S.W.3d 519, 536 (Mo. App. E.D. 2010) (internal quotation omitted). In this case, the Note and Deed of Trust directly reference each other. In paragraph 1 of the Note, Merrlin is identified as the "Lender," and the Conovers "understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the 'Note Holder.'" Paragraph 11 of the Note provides that "[i]n addition to the protections given to the Note Holder under this Note, a . . . Deed of Trust . . . ('Security Instrument'), dated the same date as this Note, *protects the Note Holder* from possible losses that might result if I do not keep the promises that I make in this Note." (Emphasis added.)

The Conovers' Deed of Trust contains no language stating that only the Note's "owner" may foreclose upon the Property. The Deed of Trust, which is defined therein as the "Security Instrument," is dated contemporaneously with the Note and defines and describes the Note. The Deed of Trust identifies Merrlin as the "Lender," and as borrowers, the Conovers "understand[ ] and agree[ ] that MERS [Mortgage Electronic Registration Systems, Inc.] holds only legal title to the interests granted by [the Conovers] in this Security Instrument; but, if necessary to comply

7

with the law or custom, MERS (as nominee for Lender *and Lender's successors and assigns*) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property . . . ." (Emphasis added.) Section 13 of the Deed of Trust refers to "Joint and Several Liability" and provides in pertinent part that "[t]he covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit *the successors and assignees of Lender*." (Emphasis added.) Section 20 refers to "Sale of Note; Change of Loan Servicer; Notice of Grievance." Section 20 specifically provides that:

> The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. . . .

Pursuant to Section 22, "[i]f Lender invokes the power of sale," then the Trustee gives notice, conducts the sale, and delivers the Trustee's deed in accordance with the Deed of Trust's terms.

Section 24 governs the appointment of a successor trustee:

> Lender, at its option, may from time to time remove Trustee and appoint a successor trustee to any Trustee appointed hereunder by an instrument recorded in the county in which this Security Instrument is recorded. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon Trustee herein and by Applicable Law.

"Applicable Law" is defined in section (J) of the Deed of Trust as "all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions." Additionally, section 16 of the Deed of Trust provides that "[t]his Security Instrument shall be governed by federal law and *the law of the jurisdiction in which the Property is located*. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law." (Emphasis added.) Any provisions

8

conflicting with Applicable Law "shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision."

Because the Property is located in Missouri, Missouri law is the "Applicable Law." Under Missouri law, Nationstar is a "[p]erson entitled to enforce" the Note if it is "the holder of the instrument." § 400.3-301. A "holder" means a person in possession of the instrument if it is payable to bearer. § 400.1-201(20). An instrument means a negotiable instrument. § 400.3-102(a). To be a negotiable instrument, the writing must: (1) be signed by the obligor; (2) contain an unconditional promise to pay a fixed amount of money; (3) contain no other promise, order, or obligation; (4) be payable on demand or at a definite time; and (5) be payable to order or bearer. §§ 400.3-401; 400.3-104(a)(1)-(3).

"Negotiation" means a transfer of possession of an instrument by a person, other than the issuer, to another person who thereby becomes the holder. § 400.3-201(a). "[N]egotiation requires transfer of possession of the instrument and its endorsement by the holder. If an instrument is payable to bearer, it may be negotiated by transfer of possession alone." § 400.3-201(b). An "endorsement" is a signature made on an instrument for the purpose of negotiating it. § 400.3-204. If the holder of an instrument endorses it "in blank," that is, does not specially endorse it to an identified person, then the instrument "becomes payable to bearer and may be negotiated by transfer of possession alone until specially endorsed." § 400.3-205(a)-(b). The holder of the instrument is entitled to enforce the instrument. § 400.3-301. "A person may be a person entitled to enforce the instrument even though the person is not the *owner* of the instrument . . . ." § 400.3-301 (emphasis added). The Note was endorsed by Merrlin to CitiMortgage, Inc., by allonge. The allonge to the Note was thereafter endorsed in blank by CitiMortgage.

Although the record on appeal does not include documentation reflecting CitiMortage's transfer of the Note to Nationstar,[11] the Appointment states that "Nationstar Mortgage, LLC, ('Grantor') is the holder of the Deed of Trust." Because our standard of review on summary judgment requires us to view the record in the light most favorable to the nonmovants—in this case, Fannie Mae and Nationstar—and to accord the nonmovants the benefit of all reasonable inferences from the record, *ITT*, 854 S.W.2d at 376, we infer that as holder of the Deed of Trust, Nationstar was also holder of the Note, which is a negotiable instrument under Missouri law.

As explained in *Bellistri v. Ocwen Loan Servicing, LLC*, 284 S.W.3d 619, 623 (Mo. App. E.D. 2009) (internal citations omitted):

> Generally, a mortgage loan consists of a promissory note and security instrument, usually a mortgage or a deed of trust, which secures payment on the note by giving the lender the ability to foreclose on the property. Typically, the same person holds both the note and the deed of trust.
>
> . . . .
>
> When the holder of the promissory note assigns or transfers the note, the deed of trust is also transferred. An assignment of the deed of trust separate from the note has no "force." Effectively, the note and the deed of trust are inseparable, and when the promissory note is transferred, it vests in the transferee "all the interest, rights, powers and security conferred by the deed of trust upon the beneficiary therein and the payee in the notes."

Under Missouri law, because the note and deed of trust are inseparable, the holder of a note is entitled to enforce the deed of trust securing that note. Because "ownership" of a note is not required in order to enforce it, "ownership" of a note is not required to enforce the deed of trust securing it. *See* § 400.3-301.

---

[11] The record on appeal does contain an affidavit of Mr. A.J. Loll, Vice President of Nationstar, in which Mr. Loll states that Nationstar acquired possession of the Note from CitiMortage on or about November 11, 2010. However, the Conovers objected to, and denied, the existence of this fact and contested the trial court's lawful ability to consider the Loll affidavit due to alleged Rule 74 deficiencies. The record is not clear whether the trial court considered the Loll affidavit or not. Instead, the trial court's "final judgment" focuses on its interpretation of the power of sale provision in the Deed of Trust and the Appointment, documents that were undisputedly a part of the record that were properly before the trial court for consideration and of which we have considered in arriving at all reasonable inferences derived from those documents.

Section 24 of the Deed of Trust refers to "Substitute Trustee" and provides that:

Lender, at its option, may from time to time remove Trustee and appoint a successor trustee to any Trustee appointed hereunder by an instrument recorded in the county in which this Security Instrument is recorded. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon Trustee herein and by Applicable Law.

"Where the authority of a substitute trustee to exercise a power of sale is . . . challenged, the burden is on the defendants to show that he succeeded to the powers in strict accordance with the terms of the deed of trust." *Winters v. Winters*, 820 S.W.2d 694, 696 (Mo. App. S.D. 1991) (internal quotation omitted). "Failure to comply with the terms of a power of sale provision[ ] voids the trustee's sale and deed." *Ayers v. Myers*, 939 S.W.2d 447, 449 (Mo. App. W.D. 1996).

On the record before us viewed in the light most favorable to the nonmovants, the record reflects that, in compliance with the terms of the Deed of Trust, Nationstar—as holder of the Note and Deed of Trust—filed an Appointment of Substitute Trustee in the office of the Clay County Recorder of Deeds, removing the original trustee and appointing MLLF as successor trustee under the Deed of Trust. After the required notice, MLLF conducted the foreclosure sale, at which the Property was sold to Fannie Mae, as evidenced by a Trustee's Deed Under Foreclosure, duly recorded in the office of the Clay County Recorder of Deeds.

When viewing the disputed facts in the light most favorable to the nonmovants, Nationstar was a holder of the Note, succeeded to all rights and interests under the Note and Deed of Trust, and had the authority to enforce the Note and Deed of Trust against the Conovers and to appoint the successor trustee to conduct the trustee's sale and to deliver the trustee's deed. The trial court erred in granting summary judgment to the Conovers on the basis that the

11

successor trustee was not properly appointed. On the record presently before us, *neither* party is entitled to summary judgment under any legal theory.[12]

As it relates to the Conovers' Motion for Summary Judgment that was granted by the trial court, Point I is granted.

## Conclusion

The trial court's "final judgment" on these consolidated cases dated February 11, 2013, and all interlocutory rulings denominated as orders, dismissals, partial judgments, or judgments that pre-dated the trial court's "final judgment" are, in their entirety, reversed.[13] This case is remanded to the trial court for further proceedings consistent with this opinion.

_____
Mark D. Pfeiffer, Presiding Judge

Joseph M. Ellis and Victor C. Howard, Judges, concur.

---

[12] "[I]f summary judgment is sustainable on any theory, even one entirely different from that addressed by the trial court, it should be sustained on appeal." *Saxony Lutheran High Sch., Inc. v. Mo. Land Reclamation Comm'n*, 392 S.W.3d 52, 56 (Mo. App. W.D. 2013).

[13] The unlawful detainer and wrongful foreclosure/quiet title cases were consolidated. *See* n.6. Because "title remains relevant and admissible in so far as it may be necessary to show who is entitled to possession" in an unlawful detainer action brought by the foreclosure purchaser, *Wells Fargo Bank, N.A. v Smith*, 392 S.W.3d 446, 462 (Mo. banc 2013) (internal quotation omitted), and because the trial court on remand will be determining title to the Property, we vacate the trial court's judgment dismissing Fannie Mae's unlawful detainer petition and Fannie Mae and Nationstar's wrongful foreclosure/quiet title counterclaim as these claims proceed from the same factual scenario.