

# In the
# Missouri Court of Appeals
# Western District

JILLIAN JOHNSON,

               Appellant,

v.

NATIONSTAR MORTGAGE, LLC., et al.

               Repondents.

**WD78179**

**OPINION FILED:**

**SEPTEMBER 22, 2015**

**Appeal from the Circuit Court of Jackson County, Missouri**
**The Honorable James Dale Youngs, Judge**

**Before Division Three: Karen King Mitchell, P.J., Lisa White Hardwick, and Anthony Rex**

**Gabbert, JJ.**

Jillian Johnson appeals the trial court's grant of summary judgment in favor of Nationstar

Mortgage, LLC ("Nationstar") and U.S. Bank, National Association, as Trustee for the holders of

the CSFB Mortgage Securities Corp., Adjustable Rate Mortgage Trust 2005-8, Adjustable Rate

Mortgage-Backed Pass-Through Certificates, Series 2005-8 ("U.S. Bank") (collectively,

"Respondents"). Johnson's amended petition sought declaratory judgment quieting title to the

property legally described as 3217 Charlotte Street in Kansas City, Missouri. Respondents filed

a motion for summary judgment and the trial court granted their motion.

On appeal, Johnson asserts that the trial court erred in sustaining Respondents' summary

judgment motion because there were substantial disputes of material fact on the issue of the

proper party to the Note and Deed of Trust signed by Johnson and the security interest in her home. Johnson maintains that a trial on the merits is necessary to determine those disputed facts and the actual party in interest to the security in her home. We affirm.

## Factual Background

On May 23, 2005, Jillian Johnson obtained a mortgage loan in the amount of $140,400.00 from America's Wholesale Lender, as evidenced by a promissory note ("Note"). The Note was executed in favor of "America's Wholesale Lender" and was subsequently endorsed in blank by "Countrywide Home Loans, Inc., a New York Corporation Doing Business as America's Wholesale Lender, by David A. Spector, Managing Director" ("Countrywide" or "Countrywide d/b/a America's Wholesale Lender"). The Note was secured by a Deed of Trust ("Deed") on the property, which Johnson executed in favor of America's Wholesale Lender on the same day. In 1996 and 2010, Countrywide registered "America's Wholesale Lender" as its fictitious trade name with the Missouri Secretary of State.

Possession of the Note and Deed was transferred to various parties through a series of transactions occurring between 2005 and 2013. The instruments—originally held by Countrywide d/b/a America's Wholesale Lender—eventually came into the possession of Respondents. Similarly, the servicing rights to the loan were transferred between several parties over this time period, ultimately coming into Respondents' possession.[1] Johnson defaulted on her loan in late 2012 and Respondent Nationstar instituted foreclosure proceedings against her.

---

[1] The beneficial interest in Johnson's mortgage loan was transferred from Countrywide to DLJ Mortgage Capital, Inc. to CSFB Mortgage Securities Corp., Adjustable Rate Mortgage Trust 2005-8, Adjustable Rate Mortgage-Backed Pass-Through Certificates, Series 2005-8, with U.S. Bank as trustee. Pursuant to the various servicing agreements, the servicer is to hold the notes and is tasked with the enforcement thereof. Bank of America was the holder of the Note when it appointed Millsap & Singer, P.C. as successor trustee, and Nationstar was the holder of the Note at the time of foreclosure.

2

On October 21, 2013, Nationstar sold the property secured by the Deed for $97,859.03, leaving an amount due and owing of $49,434.95.

On November 20, 2013, Johnson filed suit for declaratory judgment quieting title to the property against a number of other parties, including Respondents. Johnson argued that Respondents did not have the authority to foreclose upon her home because they did not take lawful possession of the Note and Deed from the purported lender, an entity named "America's Wholesale Lender, Inc." Johnson's argument was premised upon the fact that the "Lender" designated in the security instruments was identified by varying names, which Johnson argued created an ambiguity as to the identity of the original holder of the Note. Accordingly, she argued that Countrywide d/b/a America's Wholesale Lender was not the original holder of the security interest in her home and it could not legally transfer possession of a security interest to Respondents. Instead, Johnson argued that another company, America's Wholesale Lender, Inc., was the actual party to the Note and Deed and only this entity could legally assign a security interest to Respondents.

Respondents filed a motion for summary judgment, arguing that they were entitled to foreclose upon Johnson's property because they took lawful possession of the Note and Deed through a valid chain of transfers originating with the unambiguous "Lender" identified therein: Countrywide d/b/a America's Wholesale Lender. The trial court granted Respondents' motion, finding there to be no ambiguity regarding the identity of the original "Lender" in the Note and Deed. The court determined that the language used within the four corners of the Note, as viewed in conjunction with all non-disputed material facts, expressed no doubt that Countrywide was the actual party to the Note and *not* America's Wholesale Lender, Inc. Thus, the trial court held that Respondents took lawful possession of the Note and Deed and had the authority to

foreclose upon Johnson's home under the terms of the Note. The trial court also found that Nationstar was entitled to its fair and reasonable attorney's fees in the amount of $12,973.50 incurred in pursuit of the action.

**Standard of Review**

We review the trial court's grant of summary judgment *de novo*. *ITT Commercial Fin. Corp. v. Mid–Am. Marine Supply Corp.,* 854 S.W.2d 371, 376 (Mo. banc 1993). We affirm a grant of summary judgment only if the movant is entitled to judgment as a matter of law and no genuine issues of material fact exist. *Id.* at 377. Where the movant is a defending party, the movant may establish a right to summary judgment by showing

> (1) facts that negate *any one* of the claimant's elements facts, (2) that the non-movant, after an adequate period of discovery, has not been able to produce, and will not be able to produce, evidence sufficient to allow the trier of fact to find the existence of *any one* of the claimant's elements, or (3) that there is no genuine dispute as to the existence of *each* of the facts necessary to support the movant's properly-pleaded affirmative defense.

*Id.* at 381. We review the record in the light most favorable to the party against whom judgment was entered, according her the benefit of all reasonable inferences that may be drawn from the record. *Id.* at 376.

**Analysis**

In her sole point on appeal, Johnson argues that the trial court erred in finding there to be no ambiguity regarding the identity of the actual party to her Note. Specifically, she contends that the Note's reference to "America's Wholesale Lender, a Corporation organized and existing under the laws of New York" identifies the "Lender" (and, therefore, the original holder of the Note) as an entity named "America's Wholesale Lender, Inc." and *not* "America's Wholesale Lender" (or, more precisely, *not* "Countrywide Home Loans, Inc.," an entity using the fictitious trade name of "America's Wholesale Lender"). We disagree and find the trial court's conclusions to be correct in light of all non-disputed material facts.

4

The main question in this case is whether the 2005 Note and Deed executed by Johnson conveyed a valid security interest in the Charlotte Street property to Countrywide d/b/a America's Wholesale Lender, thereby making Countrywide the original holder of these instruments. If Countrywide was the original, valid holder of these instruments, it had legal authority to pass lawful title to subsequent holders, including Respondents.

To answer this question, we must first determine who the original parties intended to be the holder of the instruments "by looking at the words of the contract and giving those words their plain, ordinary, and usual meaning." *Ethridge v. TierOne Bank*, 226 S.W.3d 127, 131 (Mo. banc 2007). We determine this intent based upon the contract language alone unless its terms are ambiguous. *Id.* We must also construe the Note and Deed together because, under Missouri law, "the note and deed of trust are inseparable[.]" *Fed. Nat. Mortg. Ass'n v. Conover*, 428 S.W.3d 661, 669 (Mo. App. W.D. 2014). Thus, where the parties to a note "contemporaneously execute another written contract, such as a deed of trust, which is connected with the note by direct reference or by necessary implication, the two instruments should be considered together as the entire contract." *Id.* at 667 (internal quotation omitted).

Here, the Note executed by Johnson on May 23, 2005 explicitly defines "Lender" as America's Wholesale Lender. "America's Wholesale Lender" is a fictitious trade name of Countrywide, as evidenced by its 1996 and 2010 filings with the Missouri Secretary of State. The Note was subsequently endorsed in blank by "Countrywide Home Loans, Inc., a New York Corporation Doing Business as America's Wholesale Lender." The Deed executed by Johnson on the same day explicitly defines "Lender" as "America's Wholesale Lender . . . a corporation organized and existing under the laws of New York," and the Deed's record of filing defines "Grantee" as America's Wholesale Lender. Although the titles used to denote the holders of

5

these instruments are not identical, we do not find that this creates an ambiguity when we construe the Note and Deed together, along with all undisputed material facts.

## I.     The Note is Not Ambiguous

First, we find that the plain language of the Note and accompanying endorsement-in-blank unambiguously identifies America's Wholesale Lender (or, alternatively, Countrywide d/b/a America's Wholesale Lender) as the valid and authorized original holder of the Note. Accordingly, Countrywide was lawfully entitled to negotiate the Note to Respondents by transfer of possession.

Under Missouri law, Respondents are entitled to enforce the Note as a negotiable instrument if they are the holders of the instrument. *See* RSMo § 400.3–301 (defining "person entitled to enforce"); RSMo § 400.3-104(a)-(b) (defining "negotiable instrument" and "instrument").[2] A "holder" means the person in possession of the instrument if the instrument is payable to bearer. RSMo § 400.1–201(20). An instrument is "payable to bearer" if it does not state a payee. RSMo § 400.3-109(a)(2). The holder of an instrument may be identified in any way and their identity is determined by the intent of the issuer of the instrument. RSMo § 400.3-110(a), (c).

Negotiation of an instrument "requires transfer of possession of the instrument and its endorsement by the holder. If an instrument is payable to bearer, it may be negotiated by transfer of possession alone." RSMo § 400.3–201(b). An "endorsement" is a signature made on an instrument for the purpose of negotiating it. RSMo § 400.3–204(a)(i). "If the holder of an instrument endorses it 'in blank,' that is, does not specially endorse it to an identified person,

---

[2] "To be a negotiable instrument, the writing must: (1) be signed by the obligor; (2) contain an unconditional promise to pay a fixed amount of money; (3) contain no other promise, order, or obligation; (4) be payable on demand or at a definite time; and (5) be payable to order or bearer." *Fed. Nat. Mortg. Ass'n v. Conover*, 428 S.W.3d 661, 668 (Mo. App. W.D. 2014) (citing RSMo §§ 400.3–401; 400.3–104(a)(1)–(3)).

6

then the instrument 'becomes payable to bearer and may be negotiated by transfer of possession alone until specially endorsed.'" *Fed. Nat. Mortg. Ass'n v. Conover*, 428 S.W.3d 661, 668 (Mo. App. W.D. 2014) (citing RSMo § 400.3-205(b)). An instrument may be endorsed (*i.e.*, signed) by its holder or an authorized agent or representative of the holder. *See generally* RSMo § 400.3-402 (signature by representative). A signature may be made "by the use of any name, including a trade or assumed name, or by a word, mark, or symbol executed or adopted by a person with present intention to authenticate a writing." RSMo § 400.3-401(b)(ii). The holder of the instrument is entitled to enforce the instrument. RSMo § 400.3–301(i).

The Note signed by Johnson in 2005 unambiguously identifies the initial holder as "America's Wholesale Lender," which Respondents have shown to be a registered trade name of Countrywide Home Loans, Inc. Nothing in the Note indicates that Johnson intended "America's Wholesale Lender, Inc." to be the holder rather than "America's Wholesale Lender" when she issued it in 2005. An authorized representative of Countryside subsequently endorsed the Note in blank as "Countrywide Home Loans, Inc., doing business as America's Wholesale Lender." Even assuming, *arguendo*, that the plain language of the Note expressed some ambiguity as to the identity of the initial holder, it would be impossible for us to find that Johnson intended "America's Wholesale Lender, Inc." to be its original holder given that no such entity existed when the Note was issued in 2005. The record before us shows that an entity bearing that name was not registered with the New York Secretary of State until December 16, 2008, and no such fictitious name has ever been registered with the Missouri Secretary of State. Because the record before us reflects no indication that Johnson intended the original holder of her Note to be someone other than Countrywide d/b/a America's Wholesale Lender, and because it reflects no indication that the Note was invalidly endorsed by its holder, we find that Countrywide was

7

lawfully entitled to negotiate the Note by transfer of possession and no disputed material facts remain regarding this issue.[3]

It is undisputed that Nationstar took possession of the Note via a series of valid transfers from preceding holders beginning with Countrywide. Johnson offers no evidence to support her contention that there are remaining issues of material fact concerning the proper party to the Note, either when it was issued in 2005 or when Respondent Nationstar foreclosed upon her loan in 2013. Because there is no genuine issue of material fact as to the original holder of the Note, nor as to the authenticity of its endorsement-in-blank or its subsequent negotiation, we affirm the trial court's grant of summary judgment in favor of Respondents.

## II.      The Deed is Not Ambiguous

As in the Note, we find no ambiguity in the Deed that would invalidate Countrywide's original possession and subsequent transfer to Respondents. The plain language of the Deed leaves no genuine issue of material fact in dispute as to the identity of the "Lender" referenced in the Deed, despite Johnson's repeated contention that there is some ambiguity as to the original deed holder's identity. Further, even if we were to find some possible ambiguity in the Deed regarding the original holder's identity, we find that any such ambiguity is clarified when we construe the Deed and Note together.

---

[3] We also note that, in light of our conclusion that Countrywide Home Loans, Inc. d/b/a America's Wholesale Lender was the valid holder of the Note, we must also conclude that Countrywide was the valid holder of the Deed securing it. Under Missouri law, "[a] deed of trust securing a negotiable note passes with it," and a "party entitled to enforce a note is also entitled to enforce the deed of trust securing that note." *U.S. Bank Nat. Ass'n v. Burns*, 406 S.W.3d 495, 497 (Mo. App. E.D. 2013) (internal citations omitted) (internal quotations omitted). *See also Fed. Nat. Mortg. Ass'n v. Conover*, 428 S.W.3d 661, 669 (Mo. App. W.D. 2014) ("Under Missouri law, because the note and deed of trust are inseparable, the holder of a note is entitled to enforce the deed of trust securing that note."). As our Supreme Court has noted, it therefore follows that "the assignee of a secured promissory note becomes, by that fact alone, the beneficiary of the deed of trust." *Wells Fargo Bank, N.A. v. Smith,* 392 S.W.3d 446, 463 n. 12 (Mo. banc 2013). Thus, because Respondents have demonstrated they were the valid assignees of the Note, by operation of law, Respondents also proved that they were the assignees of the accompanying Deed.

8

"Generally, a mortgage loan consists of a promissory note and security instrument, usually a mortgage or a deed of trust, which secures payment on the note by giving the lender the ability to foreclose on the property." *Bellistri v. Ocwen Loan Servicing, LLC*, 284 S.W.3d 619, 623 (Mo. App. E.D. 2009). "A deed of trust pledges land to secure a debt and entitles its holder to foreclose on property under certain circumstances." *Richard v. Wells Fargo Bank, N.A.*, 418 S.W.3d 468, 473 (Mo. App. E.D. 2013) (internal citations omitted) (internal quotations omitted). "[W]here the parties to a note contemporaneously execute another written contract, such as a deed of trust, which is connected with the note by direct reference or by necessary implication, the two instruments should be considered together as the entire contract." *Fed. Nat. Mortg. Ass'n v. Conover*, 428 S.W.3d 661, 667 (Mo. App. W.D. 2014) (internal citations omitted) (internal quotations omitted).[4] A contract such as a deed of trust "is not ambiguous merely because the parties disagree as to its construction." *Ethridge v. TierOne Bank*, 226 S.W.3d 127, 131 (Mo. banc 2007) (internal citations omitted) (internal quotations omitted). Instead, it is only ambiguous if its terms "are susceptible to honest and fair differences[,]" such as "when there is duplicity, indistinctness, or uncertainty in the meaning of the language." *Id.*

Here, the record indicates that Johnson executed the Deed and Note on the same day. The first page of the Deed directs that it be returned to "Countrywide Home Loans, Inc. MS SV-79 Document Processing" after being recorded, while the second page defines "Lender" as "America's Wholesale Lender . . . a Corporation organized and existing under the laws of New York." The first two pages and each page thereafter were initialed by Johnson. The Deed's certification of filing with the Jackson County Recorder of Deeds (filed on May 31, 2005)

---

[4] *See also Richard v. Wells Fargo Bank, N.A.*, 418 S.W.3d 468, 473 (Mo. App. E.D. 2013) ("A note and mortgage, or deed of trust, given to secure it, both executed at one time, . . . must be construed together. . . . By construing these documents together, courts can ascertain the parties' intentions.") (internal quotations omitted) (internal citations omitted).

9

defines "Grantee" as America's Wholesale Lender and "Grantor" as Jillian Johnson. Nowhere does the Deed or its certification of filing refer to "America's Wholesale Lender, <u>Inc.</u>" or otherwise indicate that some other entity is also a lender or grantee. Johnson contends that the Deed is ambiguous because it identifies the lender/grantee by a marginally different name than is used in the endorsement-in-blank on the Note. Johnson's contention is unavailing because when the Note and the Deed are construed together, the Deed is clear and unambiguous.

First, both the Note and Deed clearly define "Lender" as America's Wholesale Lender. Second, both instruments reference Countrywide as a party to the agreement: in the Note, via the endorsement-in-blank to Countrywide d/b/a America's Wholesale Lender; in the Deed, via reference to Countrywide's Document Processing address. Third, the mailing addresses used for America's Wholesale Lender in the Note and in the Deed are identical.[5] Finally, the Registrations of Fictitious Name that Countrywide made with the Missouri Secretary of State in 1996 and 2010 clearly demonstrate public notice of the relationship between America's Wholesale Lender and Countrywide, thereby minimizing any latent ambiguity regarding the legal status of "America's Wholesale Lender."[6] Based upon the foregoing facts, we conclude that the Deed and Note clearly and unambiguously identify Countrywide d/b/a America's Wholesale Lender as a party to the security instruments. The Deed's explicit definitions of "Grantee" and "Lender" are not open to different constructions and cannot reasonably be

---

[5] America's Wholesale Lender's address is listed in the Note as "P.O. Box 660694, Dallas, TX 75266-0694"; America's Wholesale Lender's address is listed in the Deed as "P.O. Box 660694, Dallas, TX 75266-0694." Countrywide's address in 2010 Registration of Fictitious Name is listed as "4500 Park Granada, Calabasas, CA 91302"; America's Wholesale Lender's address in certification of filing Deed is listed as "4500 Park Granada, Calabasas, CA 91302").

[6] Both the 1996 and 2010 Registrations state that the name registered is "America's Wholesale Lender" and clearly list Countrywide as the fictitious name owner.

construed to mean that "America's Wholesale Lender, <u>Inc.</u>" was a lender or grantee under the Deed.[7]

Even upon viewing the record in the light most favorable to Johnson and according her the benefit of all reasonable inferences from the record, *ITT Commercial Fin. Corp. v. Mid-Am. Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993), we find her contention—that the inclusion of the lender's legal status ("a Corporation organized and existing under the laws of New York") converts "America's Wholesale Lender" into "America's Wholesale Lender, <u>Inc.</u>"—to be simply without merit and she has provided no evidence or compelling authority that would allow us to find otherwise. Point denied.

### Conclusion

On the record before us viewed in the light most favorable to Johnson, we find that Johnson has failed to prove the existence of material facts in dispute on the issue of the proper party to the Note and Deed of Trust signed by Johnson and the security interest in her home. The circuit court did not err in granting summary judgment to Respondents. We affirm the circuit court's judgment.

_____
Anthony Rex Gabbert, Judge

All concur.

---

[7] As we also note above, such a construction would be doubly unreasonable given that no entity named "America's Wholesale Lender, <u>Inc.</u>" appears to have existed when the Deed was prepared and executed in 2005. An entity bearing that name was not registered with the New York Secretary of State until December 16, 2008 and has never been registered with the Missouri Secretary of State.